# EXHIBIT A

# EXHIBIT A

E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY WASHINGTON

October 21 2025 12:10 PM

PIERCE COUNTY CLERK
NO: 25-2-11855-5

IN SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

| | |
|---|---|
| Judy Rutzen-Pagni, individually and as next friend and natural guardian of her two minor children A.A.P., and A.F.P. | Case No.:25-2-11855-5 |
| Plaintiff, | FIRST AMENDED COMPLAINT |
| v. | |
| | JURY TRIAL REQUESTED |
| Freedom Mortgage Corporation; Affinia Default Services, LLC; McCalla Raymer Leibert Pierce, LLC; Michael Gonzales, an individual; Joseph Bowers, an individual; and Eastside Funding, LLC, | |
| Defendants. | |

The Plaintiff, JUDY RUTZEN-PAGNI, acting individually and as next friend and natural guardian of her minor children, A.A.P. and A.F.P. ("Judy"), brings this action for damages and equitable relief against Defendants FREEDOM MORTGAGE CORPORATION ("Freedom"); AFFINIA DEFAULT SERVICES, LLC ("Affinia"); MCCALLA RAYMER LEIBERT PIERCE, LLC ("McCalla"); MICHAEL GONZALES, individually ("Gonzales"); JOSEPH BOWERS ("Bowers"); and EASTSIDE FUNDING, LLC ("Eastside").

1

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

## I.    Introduction

1.    This action seeks remedies for a foreclosure sale that was void *ab initio* because the purported trustee, Defendant Affinia, was not legally qualified to conduct a nonjudicial foreclosure under the mandatory requirements of Washington's Deed of Trust Act. While the sale is a legal nullity, Plaintiffs acknowledge that subsequent transfers of the Property to third parties may render the equitable remedy of rescission impracticable. Therefore, Plaintiffs' primary prayer is for monetary damages proximately caused by Defendants' unlawful acts. However, Plaintiffs expressly reserve the right to seek to quiet title should discovery reveal that any subsequent transferee is not a bona fide purchaser for value. Furthermore, based on the void nature of the sale and Defendants' pattern of unlawful conduct, Plaintiffs seek, on behalf of the public, a permanent injunction to prevent Defendants from perpetrating these illegal practices against other Washington homeowners.

2.    This action arises from a wrongful foreclosure of Ms. Rutzen-Pagni's family home, orchestrated by a purported foreclosure trustee, Defendant Affinia, that was not legally qualified to non-judicially foreclose on real property in Washington State, rendering the sale void *ab initio*. Defendant Affinia was instead a Washington LLC controlled entirely by its out-of-state parent company, the national law firm, Defendant McCalla, acting through its President, Carl McGehee and other McCalla employees as purported "governors" of Affinia. That also includes the Managing Partner of McCalla's West Coast Foreclosure and Litigation Group, Defendant Gonzales, who is listed as the ONLY "Governor" of Affinia in the records of the Washington Secretary of State at this time, and he has been the only "Governor" of Affinia since April 4, 2023. McCalla's own website affirms that Defendant Gonzales' physical office is in Long Beach, California, and his assigned phone number has a 562 area code, which applies to Long Beach. Thus, it is clear that he lives in the State of California. The Washington Deed of Trust Act ("DTA"), RCW 61.24.010(1)(a), requires that a foreclosing trustee be a Washington corporation or LLC, and at least one of its officers must be a resident of Washington State. *Id.*

2

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

Defendant Gonzales is obviously not and has never been a resident of Washington state. These actions by the McCalla Defendants were part of a deliberate scheme, which has been going on in various forms since Defendant Affinia was first registered in Washington, to circumvent this provision of the Washington Deed of Trust Act. Further, based upon information and belief, Defendant Affinia's clients are the clients of the entity that is actually handling the foreclosure work, Defendant McCalla, which is a conflict of interest. It certainly does not advertise anywhere for its services. Its website affirms that it operates in FOUR states, including Washington, and the information therein is only targeted at borrowers who might need information about the entity that is foreclosing on their property.

3.       This structural illegality, which forms the basis for Plaintiff's CPA claims, was compounded by a series of distinct and egregious violations of other sections of the DTA and Washington's Consumer Protection Act ("CPA"), RCW 19.86, *et seq.*. These violations include Defendants Freedom and Affinia's flagrant breach of their mandatory duty to postpone the sale upon receiving actual, confirmed notice of Ms. Rutzen-Pagni pending homeowner assistance fund (HAF) application; Defendant Freedom's deceptive and false promises to Ms. Rutzen-Pagni that the sale was already halted; and Defendant Affinia's shocking, bad-faith refusal to deposit the surplus funds from the wrongful sale with the Court Registry for one year and three months after the sale. This pattern of conduct gives rise to claims against the various Defendants for violations of Washington's CPA, conversion, promissory estoppel, wrongful eviction, and trespass.

4.       As a direct result of the Defendants' collective unlawful conduct, Ms. Rutzen-Pagni, a particularly vulnerable single mother recovering from cancer, and her two children, were rendered homeless, dispossessed of every worldly possession, and subjected to profound and ongoing trauma.

FIRST AMENDED COMPLAINT                          DEVLIN LAW FIRM
                                                 1526 GILPIN AVENUE
                                                 WILMINGTON, DE 19806
                                                 TEL: (302) 449-9010

## II.    PARTIES

5.    Plaintiff JUDY RUTZEN-PAGNI is, and at all times relevant was, an individual residing in Washington State and was the title owner of the subject Property located at 5604 134th St Ct. NW., Gig Harbor, WA 98332 at the time of the foreclosure (the "Property"), whose legal description is as follows:

> LOT 6, TRILLIUM PARK, ACCORDING TO THE PLAT THEREOF, RECORDED
> FEBRUARY 26, 1992, UNDER RECORDING NO. 920228033, IN PIERCE COUNTY,
> WASHINGTON, PARCEL NO. 3000075060.

6.    Plaintiffs A.A.P. and A.F.P. are minor children who, at all relevant times, resided with their mother, Plaintiff Judy Rutzen-Pagni, at the subject Property. They bring their claims through Ms. Rutzen-Pagni as their next friend and natural guardian pursuant to RCW 4.08.050.

7.    Defendant FREEDOM MORTGAGE CORPORATION is a foreign corporation that conducts substantial business in Washington State, including in Pierce County. At all relevant times, Freedom acted in its dual capacity as the mortgage servicer for Ms. Rutzen-Pagni's home loan and as the beneficiary of the Deed of Trust. In this dual capacity, Freedom was responsible for communications and loss mitigation (as servicer) and held the power to enforce the note and direct the foreclosure (as beneficiary). It was the entity that initiated the non-judicial foreclosure process and caused it to be completed.

8.    Defendant Freedom also chose to retain the services of Defendant Affinia to act as the foreclosing trustee when it could not do so because it did not meet the qualifications required of the DTA. RCW 61.24.010(1)(a). Plaintiff maintains, based upon information and belief, that Defendant Freedom knew that Affinia was not acting as a standalone foreclosing trustee but rather it knew that all communications with Affinia were actually with McCalla employees, including but not limited to the President, Mr. McGehee, and the Managing Partner of the West Coast Foreclosure and Litigation Group, Defendant Michael Gonzales.

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

9.      Defendant AFFINIA DEFAULT SERVICES, LLC is a Washington limited liability company that conducts substantial business in Washington State, including in Pierce County, and allegedly became the purported Successor Trustee of the Deed of Trust on Plaintiff's Property. Defendant Affinia is the entity that acted as the trustee for the Plaintiff's foreclosure even though it could not lawfully do so and has acted and continues to act as a foreclosing trustee in numerous non-judicial foreclosures throughout Washington State.

10.     Defendant JOSEPH BOWERS ("Bowers") is an individual, and at all times relevant was an individual residing in Washington State at the time of the foreclosure and is the purchaser of the Property at the nonjudicial foreclosure sale.

11.     Defendant EASTSIDE FUNDING, LLC ("Eastside Funding") is a Washington limited liability company that conducts substantial business in Washington State, including in Pierce County, by way of providing funding to persons and companies that buy properties at foreclosure auctions throughout the State of Washington. Defendant Eastside took title to the Property in connection with the sale to Defendant Bowers. Given its involvement in huge numbers of non-judicial foreclosure sales throughout Washington going back many years, Defendant Eastside knew or should have known that Affinia could not lawfully act as a foreclosing trustee under the DTA.

12.     Defendant MCCALLA RAYMER LEIBERT PIERCE, LLC ("McCalla") is a foreign limited liability company that is a national foreclosure law firm that conducts substantial business in Washington State, including in Pierce County. At all relevant times, since Affinia was first established, it has been and remains the alter ego of Defendant McCalla. Defendant Affinia is controlled entirely by the employees of Defendant McCalla and at all times acts on its behalf and for its benefit, as well as McCalla's clients, including Defendant Freedom.

13.     Defendant MICHAEL GONZALES, an individual, is Affinia's current sole governor and has been the only governor since at least April 4, 2023, while he is simultaneously the Managing Partner of McCalla's West Coast Foreclosure and Litigation Group. Mr. Gonzales

5

FIRST AMENDED COMPLAINT

is not licensed to practice law in Washington, and based upon the information on Defendant McCalla's website, resides and works in Southern California.

### III.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction over this action according to RCW 2.08.010.

15.    Venue is proper in Pierce County under RCW 4.12.025 because Defendants conduct substantial business in this county and because a substantial part of the events or omissions giving rise to the claims occurred in this county, causing injury to Plaintiff.

### IV.    FACTUAL ALLEGATIONS

#### A.  The Loan, the Parties, and Plaintiff's Good Faith Efforts to Avert Foreclosure

16.    On or about February 13, 2018, Plaintiff Judy Rutzen-Pagni, then known as Judy Pagni, executed a Deed of Trust to secure a promissory note on the Property.The original parties to the Deed of Trust were Judy Pagni as Grantor, Caliber Home Loans, Inc. as Beneficiary, and First American Title Insurance Company as Trustee. The Deed of Trust was recorded in the official records of Pierce County, Washington, on February 20, 2018, under Auditor's File No. 201802200014. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit A.**

17.    Subsequently, the beneficial interest in the Deed of Trust was purportedly transferred to Defendant Freedom. This transfer was memorialized in an Assignment of Deed of Trust, recorded on February 14, 2022, under Pierce County Auditor's File No. 202202140004, thereby purportedly making Defendant Freedom the beneficiary under the Deed of Trust with the purported right to enforce the Promissory Note. A true and correct copy of the Assignment of Deed of Trust is attached hereto as **Exhibit B.**

18.    In 2020, Ms. Rutzen-Pagni fell into default on her mortgage payments after losing her employment during the COVID-19 pandemic and while concurrently battling a cancer

6

FIRST AMENDED COMPLAINT

diagnosis that required multiple surgeries and extensive medical treatment. In addition to these challenges, Ms. Rutzen-Pagni suffered a significant loss of vision, rendering her legally blind in one eye and severely impairing her vision in the other.

19.    Defendant Freedom alleges that Judy fell into default on the loan, with payments becoming delinquent as of November 1, 2020.

20.    Despite these profound hardships, Ms. Rutzen-Pagni, while still facing significant personal and medical challenges, worked diligently to try to sell her property or find a way to cure the mortgage arrears and save her home. As early as May 2023, she explored options to sell the property.

21.    Concurrently, beginning in July 2023, she retained the assistance of a HUD-approved housing counselor, Darlene Hopkins, to explore loss mitigation options with the servicer of her loan, Defendant Freedom (acting in its capacity as servicer), to prevent foreclosure. Throughout this process, both directly and through her housing counselor, Ms. Rutzen-Pagni conveyed the dire nature of her circumstances to Freedom, including the financial hardship stemming from her cancer diagnosis and related medical issues. Defendant Freedom was therefore on actual notice of Plaintiff's significant personal and medical vulnerabilities.

22.    The foreclosure was initiated through a series of procedurally and legally defective actions. Upon information and belief, Defendant Freedom was not the "holder of the Note" secured by the Deed of Trust at the time it initiated the foreclosure and therefore lacked the authority to act as the "beneficiary" as defined by Washington's Deed of Trust Act ("DTA"). *See* RCW 61.24.005(2).

23.    The Notice of Default was issued and mailed on March 7, 2023.

24.    Thereafter, on August 15, 2023, Defendant Freedom, acting as the purported beneficiary, executed an Appointment of Successor Trustee. This instrument sought to replace the original trustee with Defendant Affinia Default Services, LLC ("Affinia").

FIRST AMENDED COMPLAINT                    DEVLIN LAW FIRM
                                           1526 GILPIN AVENUE
                                           WILMINGTON, DE 19806
                                           TEL: (302) 449-9010

25.     This appointment was fundamentally flawed because Defendant Affinia was, and is, a California-based entity not legally qualified to act as a foreclosure trustee in Washington State under the strict requirements of RCW 61.24.010.

26.     Compounding these defects, Defendant Affinia acted as trustee *before* it was even purportedly appointed. The Notice of Trustee's Sale ("NOTS") was signed and notarized in Los Angeles County, California, by Kellee Vollendorff, an employee of Affinia, *prior* to Affinia's formal appointment as successor trustee. An entity with no legal authority as a trustee cannot execute a valid Notice of Trustee's Sale.

27.     The legally ineffective Appointment of Successor Trustee and the prematurely executed NOTS were then recorded concurrently in Pierce County on August 28, 2023. The recorded Notice of Trustee's Sale asserted arrears in the amount of $47,437.62. A true and correct copy of the Appointment of Successor Trustee is attached as **Exhibit C**, and the Notice of Trustee's sale is attached as **Exhibit D.**

### B.  The HAF Application and Defendant's Mandatory Duty to Postpone the Sale

28.     In December 2023, Ms. Hopkins advised Ms. Rutzen-Pagni that she might be eligible for assistance through the Washington State Housing Assistance Fund ("HAF"), a program administered by the Washington State Finance Commission to provide federal relief funds to qualified homeowners. She then assisted Ms. Rutzen-Pagni in applying for a HAF grant, which, combined with a $7,000 financial contribution from her mother, was sufficient to reinstate her loan in full.

29.     On December 18, 2023, Ms. Hopkins received written confirmation of Ms. Rutzen-Pagni's completed and pending HAF application. The HAF application and eligibility letter were submitted under the Plaintiff's former name, "Judy Pagni," which is the exact name of the Grantor on the original Deed of Trust (**Exhibit A**) that forms the basis of Defendants'

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

purported authority to foreclose. Therefore, Defendants knew or were on constructive notice that the HAF application pertained to the borrower on the subject loan.

30.     The HAF program and its function were well known to sophisticated mortgage servicers like Freedom, which operated nationwide and had encountered such applications in numerous states.

31.     Immediately upon receipt of the HAF notice, Ms. Hopkins notified both Affinia and Freedom.

32.     At 11:17 a.m. on December 18, 2023, Ms. Hopkins emailed the written HAF notice to Defendant Freedom in both its servicer and purported beneficiary capacities, at lossmitigation@freedommortgage.com. Freedom confirmed its receipt via an automated return-receipt email one minute later at 11:18 a.m.[1]

33.     Concurrently, Ms. Hopkins emailed the HAF notice to Larissa.Anderson@AffiniaDefault.com. This was the specific email address for Affinia's purported governor, Larissa Anderson, as listed on two official documents filed with the Washington Secretary of State, making it a designated channel for formal communication.

34.     When she received no response from that officially designated email address, Ms. Hopkins attempted to call Ms. Anderson directly using contact information on the foreclosure documentation, but the number was inoperable. She then called Affinia's general number (425-800-4703), provided to her during her prior effort. She spoke to a person who held themselves out as an Affinia representative, and was told that Ms. Anderson no longer worked there. The representative then instructed her to send the HAF notice to info@affiniadefault.com.

35.     At 11:33 a.m. on December 18, 2023, Ms. Hopkins followed this instruction and emailed the written HAF notice to info@affiniadefault.com.

---

[1] It should be noted that Ms. Rutzen-Pagni doesn't concede that Defendant Freedom was the Beneficiary as defined by the DTA.

9

FIRST AMENDED COMPLAINT

36.    Through these sequential actions, Plaintiff's agent provided Defendant Affinia with actual, written notice of the HAF application through multiple channels, while simultaneously exposing the dysfunctional and non-compliant nature of Affinia's purported Washington operation.

37.    In the phone call to Affinia, Darlene Hopkins informed the representative that Ms. Rutzen-Pagni had applied for financial assistance from HAF. She explained that Rutzen-Pagni had written confirmation from HAF that her application was complete and requested that the Affinia representative provide her with contact information to send it to them for review. She also explained that the foreclosure sale on the Property, scheduled for December 22, 2023, as per the recorded NOTS, had to be continued for at least thirty days to allow Rutzen-Pagni's HAF application to be fully considered as required by Washington law. RCW 61.24.048(3).

38.    It is important to note that HAF funds were provided to all 50 states, and that people in all of those states were able to use approved funds to prevent the loss of their homes to foreclosure. So, Defendant Freedom and its employees were well aware of the program and its requirements.

### C.  Defendants' Statutory Violations and False Promises

39.    During this period, the public listing of her home for foreclosure subjected Ms. Rutzen-Pagni and her children to repeated and escalating harassment. She received a constant barrage of scam calls, and strangers repeatedly came onto her property uninvited. This created an unsafe and anxious environment, culminating in an incident where Ms. Rutzen-Pagni was forced to call the police after trespassers were on her property at night, with one man shining a flashlight directly into her children's bedroom windows, causing them to hide in a closet until police arrived.

40.    Seeking to confirm that the sale had been halted and to escape the distressing environment, Ms. Rutzen-Pagni and Ms. Hopkins spoke by telephone on December 19, 2023,

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

with a representative of Defendant Freedom, acting in its servicer capacity, identified as "Whitney" (employee #4338).

41.    During this recorded call, Whitney provided an explicit and unequivocal assurance that the foreclosure sale had already been postponed based on a prior loss mitigation package and would not proceed as scheduled.

42.    Justifiably relying on this direct and unequivocal promise from Defendant Freedom, Ms. Rutzen-Pagni believed her home was safe. Based on this reassurance, she made the critical decision to forgo retaining counsel to seek an emergency temporary restraining order to enjoin the sale.

43.    Believing her home was safe and wanting to provide her children a brief escape from the harassment that was causing severe anxiety for her children, Ms. Rutzen-Pagni arranged for them to spend the Christmas holiday at a hotel in Seattle, using financial assistance from her mother. She packed only a weekend bag for herself and her children, fully intending to return home after the holiday.

### D.  The Wrongful Sale and Immediate Aftermath

44.    In the early morning hours of Friday, December 22, 2023, the last day before the Christmas holiday weekend, Ms. Rutzen-Pagni learned from a realtor friend that her home was still listed for a foreclosure auction that day. The news came as a profound shock, as Plaintiffs had relied on Defendant Freedom's express assurances that the accepted HAF funds would halt any sale.

45.    In a state of panic, Ms. Rutzen-Pagni and her HUD counselor, Ms. Hopkins, began making frantic calls to prevent the loss of their home. They reached Defendant Freedom and spoke with representative Mark (employee # 4687), before being transferred to "Pierre" (employee #07490). Pierre acknowledged receipt of the HAF approval letter but stated, in direct contradiction to the servicer's prior promises from Whitney employee #4338), that "the sale will

11

FIRST AMENDED COMPLAINT

go on." Plaintiffs also attempted to contact the trustee, Defendant Affinia, but its telephone line was not operational.

46.     In direct violation of their statutory duties under RCW 61.24.048 and breach of Defendant Freedom's express promise, Defendants Affinia and McCalla proceeded with the foreclosure sale on December 22, 2023.

47.     Immediately after the wrongful sale, Ms. Rutzen-Pagni contaced Defendant Freedom again, where an unknown representative informed her that because the loan was closed, there was nothing they could do.

48.     Stranded without transportation and already in a state of shock, Ms. Rutzen-Pagni was paralyzed by a justifiable fear of what she would find at her home and the danger of confronting the individuals there alone. Consequently, she was both physically and emotionally incapable of returning to the Property by herself.

49.     The Property was sold to Defendants Joseph Bowers and Eastside Funding, LLC (collectively, the "Purchaser Defendants"). The Trustee's Deed Upon Sale, recorded on January 4, 2024, contains significant irregularities. The deed was:

        a)  Executed in Los Angeles County, California, by one "Phally Eng," a purported "Officer" of Defendant Affinia. As a Washington limited liability company, Affinia has members or managers, not "officers."

        b)  Notarized on January 3, 2024, by Omar Solorzano, an individual identified in public records as a "Legal Assistant" for Defendant McCalla, the law firm orchestrating the sale.

50.     Over the holiday weekend and into the following weeks, Plaintiffs continued their desperate but futile attempts to reach a representative at Defendant Affinia. These efforts were compounded by the fact that her HUD counselor was unavailable due to the holiday.

51.     While Ms. Rutzen-Pagni was attempting to compel Defendants to remedy the wrongful sale, Defendant Affinia, acting through its agents at Defendant McCalla, proceeded to

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

finalize the transaction. They issued a Trustee's Deed Upon Sale, containing the previously noted irregularities, to the Purchasing Defendants. The Trustee's Deed was recorded on January 5, 2024.

52.     In January 2024, after facing a wall of silence from Defendants, Ms. Rutzen-Pagni retained legal counsel to assert their rights. However, unbeknownst to her, the window to unwind the sale was already closing. On January 19, 2024, a mere 14 days after their title was officially recorded, the Purchaser Defendants conveyed the Property via Statutory Warranty Deed to a third-party investor. This rapid conveyance rendered Ms. Rutzen-Pagni's efforts to recover her home impracticable.

53.     The property was then subsequently renovated by the third-party investor and sold in the spring of 2024 for approximately $1.2 million, a price that demonstrates the substantial home equity Plaintiffs lost as a direct and proximate result of Defendants' unlawful conduct.

### E.  The Illegal Eviction and Willful Conversion of Plaintiffs' Possessions

54.     At all times before, during, and immediately after the wrongful sale, Ms. Rutzen-Pagni was the lawful occupant of the Property and took numerous affirmative steps demonstrating she had not abandoned her home. These indicia of continued occupancy included continuing to pay utility bills and arranging for the off-site care of two of her family's pets, and intending to return after the holiday. She left every worldly possession behind, the entire contents of a 3,500 square foot home, in the firm belief that she would be returning permanently.

55.     Critically, she had left for the holidays and did not plan to return until mid-January 2024, with only a suitcase of clothes for a couple of weeks for herself and her children, leaving every other worldly possession—constituting the entire contents of a 3,500-square-foot home—inside, in the firm belief that she would be returning permanently once the wrongful sale was corrected.

13

FIRST AMENDED COMPLAINT

56.     On January 7, 2024, the Purchase Defendants and/or their agents, without filing an unlawful detainer action, obtaining a court order, or serving a writ of restitution upon Ms. Rutzen-Pagni, as required by Washington's unlawful detainer statutes, RCW 59.12 et al, executed an illegal self-help eviction by unlawfully changing the locks on Ms. Rutzen-Pagni's home.

57.     On the same day, a neighbor texted Ms. Rutzen-Pagni that her house looked "empty. and inquired if she was moving.

58.     Upon learning her home was being emptied, Ms. Rutzen-Pagni called the police, only to be told it was a civil matter and they would not intervene.

59.     Shortly thereafter, on January 10, 2024, a neighbor alerted her that a dumpster had been placed in her driveway and individuals were removing all of her family's belongings from the house.

60.     The personal property wrongfully seized and disposed of constituted the entirety of her family's possessions, including furniture, clothing, family photographs, her children's belongings, and items of profound and irreplaceable sentimental value, such as the ashes of her deceased father, and the cremated remains of four cherished family pets: three boxer dogs, Bruno, Eliot, and Ruby, and a cat, Mow Mow.

61.     When Ms. Rutzen-Pagni learned that her personal belongings were being sold on Facebook Marketplace. Her mother, on her behalf, immediately contacted Defendant Bowers, the purchaser. Bowers provided further misleading assurances that the issue would be "resolved," again lulling Plaintiff into believing her property would be recovered. However, no such resolution occurred, and no property was ever returned.

62.     On January 11, 2024, Ms. Rutzen-Pagni called the Pierce County Sheriff's Department and filed a police report for the theft of her belongings. She also provided the police with her contact information to give to the new occupants, though no attempt was ever made to return her mail or personal property to her.

FIRST AMENDED COMPLAINT                          DEVLIN LAW FIRM
                                                 1526 GILPIN AVENUE
                                                 WILMINGTON, DE 19806
                                                 TEL: (302) 449-9010

### F.  The Catastrophic Aftermath: Homelessness, Identity Theft, and Trauma

63.    Rendered homeless, Plaintiff and her children were forced to move between hotels and temporary Airbnbs. Their situation was one of constant crisis, marked by traumatic incidents such as having their payment cards declined at hotels and being threatened with immediate eviction by police. The family was only saved from being forced onto the streets by the emergency financial intervention of Plaintiff's aunt, after her primary family support, provided by her mother, had been exhausted.

64.    The Purchaser Defendants' willful interference with Ms. Rutzen-Pagni's mail, which they discarded rather than returning to the sender, directly contributed to her becoming a victim of widespread identity theft.

65.    The manifestations of this identity theft include, but are not limited to:

a)  Receiving notifications from pharmacies regarding fraudulent and unauthorized prescription refill attempts being made in her name;

b)  Discovering and being forced to contend with unauthorized credit card accounts, including Capital One credit cards, that were fraudulently opened by third parties using her stolen information;

c)  Being forced to place fraud alerts and credit locks with all major credit bureaus (Equifax, Experian, and TransUnion) to mitigate ongoing and future financial damage;

d)  Suffering a significant negative impact on her credit score resulting from unauthorized inquiries and fraudulent accounts appearing on her credit report; and

e)  Suffering the permanent loss of access to her long-standing personal email account after the provider (AOL) detected fraudulent activity and permanently locked the account, depriving her of years of personal and confidential information.

15

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

66.     Throughout her communications with Defendant Freedom, both directly and through her housing counselor during the loss mitigation process, Plaintiff conveyed the dire nature of her circumstances, including the financial hardship stemming from her cancer diagnosis and related medical issues. Defendant Freedom was therefore on actual or constructive notice of Plaintiff's significant personal and medical vulnerabilities.

67.     The severe emotional distress inflicted upon Ms. Rutzen-Pagni has been accompanied by objective physical manifestations, including stress-induced vomiting and recurring panic attacks. The dislocation and chaos resulting from Defendants' actions also prevented her from obtaining timely medical care for her pre-existing vision impairment, causing a significant and potentially irreversible worsening of her eyesight. Furthermore, the conversion of her property included the loss of essential medical items and recently filled prescriptions. This forced Ms. Rutzen-Pagni to undertake the humiliating ordeal of filing a police report and involving the health care authority simply to prove the loss and obtain necessary medication refills, compounding her trauma and distress. The psychological harm to the family is ongoing, with both Ms. Rutzen-Pagni and her children suffering from persistent fear that any knock on the door will lead to another eviction.

### G.  Summary of Economic Damages

68.     At the time of the wrongful foreclosure on December 22, 2023, the Property had an appraised value of approximately $883,600.00, while the total secured liens against it were approximately $629,941.15.

69.     As a direct result of Defendants' unlawful conduct, Plaintiffs were stripped of their substantial home equity, totaling approximately $253,658.85.

70.     Following the sale, Defendant McCalla, in its capacity as trustee, further breached its statutory duties under RCW 61.24.080(3). The trustee's sale generated surplus funds belonging to Plaintiffs. Instead of depositing these funds with the clerk of the court in a timely

FIRST AMENDED COMPLAINT                    DEVLIN LAW FIRM
                                          1526 GILPIN AVENUE
                                          WILMINGTON, DE 19806
                                          TEL: (302) 449-9010

manner, Defendant McCalla wrongfully withheld them, failing to deposit them into the Court Registry for more than a year after the foreclosure.

71.     The ultimate resale of the renovated Property in the spring of 2024 for approximately $1.2 million further demonstrates the magnitude of the equity and future appreciation lost by Plaintiffs as a direct and proximate result of the wrongful foreclosure.

### H.  The Trustee's Lack of Legal Qualification and Sham Corporate Status

72.     The foreclosure of Ms. Rutzen-Pagni's home was conducted by Defendant Affinia, an entity that was not legally qualified to act as a foreclosure trustee in the State of Washington at any relevant time. The DTA imposes strict, non-waivable statutory prerequisites that a trustee must satisfy. Failure to comply with these foundational requirements renders a foreclosure sale void *ab initio*. *See Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 108 (2013) (holding that while the facts concerned agricultural land, the dispositive legal principle is that strict compliance with the DTA's foundational requirements is mandatory, and failure to meet such prerequisites renders a sale void, not merely voidable).

73.     The DTA establishes two core requirements relevant here. First, a trustee must be a domestic entity of which at least one officer is a Washington resident. RCW 61.24.010(1)(a).

74.     Second, a trustee must also maintain a legitimate physical presence within the state. The DTA requires that a trustee "maintain a physical office in this state with telephone service at that address." RCW 61.24.030(6). This requirement ensures that Washington homeowners have a meaningful, local point of contact for obtaining information and exercising their rights, including service of process.

75.     Defendant Affinia purported at the time of the foreclosure of Ms. Rutzen-Pagni's home to have an office in Bellevue, Washington (as noted above), but based on information and belief, Ms. Rutzen-Pagni asserts, based upon information and belief, that this was a sham address and that Affinia did not actually conduct business from that location. In addition, the telephone

17

FIRST AMENDED COMPLAINT

number listed on the foreclosure documentation used by Defendant Affinia that was sent to Ms. Rutzen-Pagni was actually the number for Ms. Lee's office at Defendant McCalla. Plaintiff does not know at this time where Ms. Anderson or Ms. Lee resided at any of the relevant times in this case.

76.     The next Annual Report was filed with the Secretary of State on February 18, 2022, and it listed the Bellevue address as the "Principal Office Street Address," but the mailing address was that of Defendant McCalla in Roswell, Georgia. The Governors were now listed as Ms. Anderson and Defendant Gonzales. The telephone number had a 425 area code, and there was an email address for Ms. Anderson at Affinia. However, based on her LinkedIn profile, which indicates that she worked remotely at times for Affinia, there is no way to know if anyone would have answered that telephone number or whether it was being answered at the Bellevue address.

77.     The filing was signed by Elizabeth DeSilva, who is the General Counsel of Defendant McCalla. She identified herself as the "Authorized Person" using the Bellevue address and the title "DGC". Neither of the purported "Governors" of Defendant Affinia signed the document. Ms. DeSilva's firm profile makes clear that she works and presumably lives in or near Irving, Texas, another of Defendant McCalla's offices. She is not licensed to practice law in the State of Washington and, therefore, presumably has no knowledge of the requirements of Washington law, just like Defendant Gonzales. More importantly, her involvement on behalf of Defendant Affinia further confirms that it is controlled entirely by Defendant McCalla and that there are no actual "Governors", i.e., members of the LLC who were actually performing the duties of members of an LLC, residing in Washington State.

78.     Ms. DeSilva decided again on April 4, 2023, to sign as an "Authorized Person" on the 2023 Annual Report for Defendant Affinia. Of course, there is no evidence in the records of the Secretary of State that shows how or why an officer of Defendant McCalla can take actions on behalf of Defendant Affinia, since none of its employees who have done so, nor any of its

18

FIRST AMENDED COMPLAINT

officers, are identified as being members, aka "Governors", of Defendant Affinia. This time, only Defendant Gonzales was listed as a "Governor". The Principal Office Street and Mailing Address was the Bellevue address, but the telephone number had changed back to one with a 562 area code, which is in the Long Beach area, where Defendant Gonzales lives and works. The "Principal Office" email address was CLIENTCOMMUNICATIONS@MCCALLA.COM.

79.     On May 9, 2024, Frank Stokes, a Compliance Analyst for Defendant McCalla, signed the 2024 Annual Report as the "Authorized Representative" and identified the Bellevue address for the Principal Office Street Address but listed McCalla's address in Irving, Texas as the Principal Office Mailing Address. It was also the address to be used for return of the Filing. Again, the phone number had a 562 area code and the Principal Office email address was MRLPANNUALREPORTS@MCCALLA.COM. The only "Governor" was still Defendant Gonzales.[2]

80.     Affinia has never functioned independently of McCalla, which prioritized the desires of its clients rather than acting neutrally as required under the DTA.

81.     At all relevant times, Affinia was and is the alter ego of Defendant McCalla, an out-of-state law firm. Affinia was created and used by McCalla as an instrument to circumvent Washington law and create the false appearance of a qualified, in-state trustee. The evidence of this alter ego relationship and Affinia's intentional non-compliance is overwhelming and demonstrates a multi-stage scheme:

   a.  Creation and Control by Out-of-State Parent: Affinia's corporate existence
       has been controlled by McCalla since its inception. Its corporate formation
       documents were signed by Adam Silver, the Chief Operating Officer of
       Defendant McCalla. Mr. Silver also works and resides in Georgia, not

_____

[2] The contents of the 2025 Annual Report as described here, are incorporated herein by reference.

FIRST AMENDED COMPLAINT                          DEVLIN LAW FIRM
                                                 1526 GILPIN AVENUE
                                                 WILMINGTON, DE 19806
                                                 TEL: (302) 449-9010

Washington state. On February 3, 2021, Mr. Silver also signed a Statement of Correction on behalf of Affinia, attesting to its conversion from a Florida LLC to a Washington LLC. Official filings further identify McCalla as the "Executor Entity," providing an explicit admission of McCalla's complete control of Affinia.

b. <u>Erection of a Temporary Façade of Compliance:</u> To create an initial, thin façade of compliance, McCalla made the following cosmetic changes:

  i. It was not until the Annual Report was filed on June 29, 2021, that Affinia's address was changed to 320 120th Avenue NE, Suite B203, Bellevue, WA 98005-3016. For the first time, it also included an email address for Larissa Anderson at "AffinityDefault.com".

  ii. McCalla appointed two "Governors" with knowledge of Washington's DTA requirements: Wendy Lee, a McCalla Managing Partner, and Larissa Anderson. This façade was itself a sham.

  iii. Upon information and belief, Ms. Lee worked at the offices of Defendant McCalla at all times she was purportedly a "Governor" of Affinia.[3]

  iv. Ms. Anderson's public profile described her role as "hybrid," meaning she was not required to be physically present at any Washington office,

---

[3] Based upon information and belief, Plaintiff maintains that Ms. Lee worked at the offices of Defendant McCalla at all times that she was purportedly a "Governor" of Defendant Affinia. Wendy Lee, who was a Managing Partner at Defendant McCalla, and who was licensed to practice law in Washington state. She had worked in the field of non-judicial foreclosures in Washington for years and knew inside and out the requirements for acting as a foreclosing trustee here.

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

and improperly listed her title as "Vice President," a role that does not

exist for a Washington LLC.[4]

c.  <u>Devolution into Open Non-Compliance:</u> By the time of the subject

foreclosure, even this thin façade was abandoned. Public records reveal

Affinia's sole governor during the relevant period was Defendant Gonzales,

the Managing Partner of McCalla's West Coast Foreclosure department, who

resides and works in Southern California and is not a Washington resident. At

this point, Affinia was in open and undeniable violation of the DTA's

residency requirement.

d.  <u>Operation from Out-of-State Offices:</u> Throughout its existence, Affinia has

never maintained a legitimate, staffed physical office in Washington as

required by the DTA. At all times, its listed corporate address was Defendant

McCalla's office in Roswell, Georgia. Its listed corporate phone numbers and

email addresses were, at various times, those of McCalla offices and

personnel in Georgia, California, and Texas. All communications were routed

to the out-of-state parent company.

e.  <u>Governance by Out-of-State Personnel:</u> Public records reveal Affinia's sole

governor during the relevant period was Defendant Gonzales, the Managing

Partner of McCalla's West Coast Foreclosure department, who resides and

works in Southern California and is not a Washington resident.

---

[4]  Notably, Ms. Anderson's LinkedIn profile describes her time working at Defendant Affinia as being "hybrid" – meaning that she was not required to be physically present in its offices every day. Her LinkedIn also described her as being the "Vice President" of Affinia, even though it is an LLC and there are no Vice Presidents of LLCs. Larissa Anderson had worked for many years for another foreclosing trustee company in Washington, so she was also very knowledgeable about the requirements under the DTA as well.

FIRST AMENDED COMPLAINT                    DEVLIN LAW FIRM
                                          1526 GILPIN AVENUE
                                          WILMINGTON, DE 19806
                                          TEL: (302) 449-9010

    f.  <u>Execution of Foreclosure by Out-of-State Actors:</u> The practical result of this sham structure is that the key acts of foreclosure were performed by McCalla employees outside of Washington. The Notice of Trustee's Sale was signed in California by a McCalla employee, Kellee Vollendorff. The Trustee's Deed was also signed in California by another McCalla employee, proving that the statutory trustee functions were illegally outsourced to the out-of-state parent.

**I.  A Pattern of Willful and Unlawful Conduct**

82.    Defendant McCalla's operation of this sham trustee scheme is not an isolated incident of negligence but rather reflects a pattern and practice of willfully disregarding Washington law. This is not only evidenced by the fact that Ms. Lee and Ms. Anderson were both very experienced with the requirements of Washington foreclosure law and were lauded for that knowledge by their employers and trade organizations publicly, but that a major law firm did it and actions were undertaken by leaders of the firm who had every ability to know precisely what Washington law required and chose not to do so, speaks volumes.

83.    On information and belief, Defendant Affinia was a party to prior litigation in Washington where its legal qualification as a trustee was challenged on nearly identical grounds, involving its operation by a McCalla attorney who was improperly acting as one of its Governors. This demonstrates that even if it were remotely possible that Defendants Affinia and McCalla didn't know Washington law during the entirety of Affinia's existence, they were certainly on actual notice of the illegal nature of their business structure long before they wrongfully foreclosed on Ms. Rutzen-Pagni's home. This renders their actions in this case willful and in bad faith. Of course, Ms. Rutzen-Pagni maintains that Defendants Affinia and McCalla, and everyone involved in their operations since inception, knew or should have known that Affinia's actions were not in compliance with the requirements of the DTA. RCW 61.24.010(1)(a) and RCW 61.24.030(6).

### J.  Trustee's Egregious Breach of Duty Regarding Surplus Funds

84.     The wrongful foreclosure sale of Plaintiff's home on December 22, 2023, generated surplus funds for $32,258.82. Under RCW 61.24.080(3), a trustee has a mandatory, non-discretionary duty to deposit surplus funds with the court clerk in a timely manner. This duty exists to ensure that homeowners who have lost their property can quickly access any remaining equity. While it was a pittance given the equity she had in the Property, she was entitled to these funds.

85.     Under RCW 61.24.080(3), a trustee has a mandatory, non-discretionary duty to deposit surplus funds with the court clerk in a timely manner. This duty exists to ensure that homeowners who have lost their property can quickly access any remaining equity to secure housing and maintain their financial stability.

86.     Defendant Affinia, acting through Defendant McCalla, with gross negligence and in bad faith, refused to deposit the surplus funds from the sale of Ms. Rutzen-Pagni's home until April 2, 2025, a delay of one year, three months, and eleven days.

87.     This extraordinary delay constitutes a flagrant breach of Affinia's statutory and fiduciary duties, and it makes it even clearer that Affinia does NOT operate as a separate entity that conforms to the requirements of the DTA. During this entire period, Ms. Rutzen-Pagni and her two children were homeless and in desperate financial distress. This bad-faith retention of funds was compounded by an act of self-dealing, wherein Defendant McCalla unlawfully retained $1,200.00 of Ms. Rutzen-Pagni's own funds for purported "attorney's fees"—fees that were not only unauthorized but grossly excessive for the simple administrative task of depositing the funds.

88.     Furthermore, this delay was not a mere oversight. Defendants Affinia and McCalla made a conscious choice not to attempt to locate Ms. Rutzen-Pagni or otherwise provide her with notice of the funds, despite knowing she no longer lived at the Property and that any mail forwarding would have long expired. This conduct effectively concealed the existence

23

of the surplus funds from a displaced homeowner, whom they knew was in desperate need. It was only through the independent investigation of her counsel that the existence of these funds was discovered.

## V.    CAUSES OF ACTION

### A. Count I: Violation of the Washington Consumer Protection Act, RCW 19.86, for Acts as a Sham Trustee
### (Against Defendants Affinia, McCalla, and Gonzales)

89.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

90.    The conduct of Defendants Affinia Default Services, LLC ("Affinia"), McCalla Raymer Leibert Pierce, LLC ("McCalla"), and Michael Gonzales (collectively, the "Trustee Defendants") constitutes unfair and deceptive acts or practices in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, et seq..

91.    To prevail on a CPA claim, a plaintiff must establish five elements: (1) an unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986). The Trustee Defendants' conduct satisfies each of these five elements.

Unfair or Deceptive Act or Practice:

92.    Operating a Sham Trustee Scheme: The Trustee Defendants' operation of Affinia as a foreclosure trustee, despite its failure to qualify under RCW 61.24.010(1)(a), rendering Defendant Affinia without legal authority to conduct a nonjudicial foreclosure. The resulting foreclosure sale was therefore void *ab initio*. Conducting a foreclosure sale that is a legal nullity is an unfair and deceptive act with the capacity to deceive the public. This scheme is:

a)    Deceptive because it presented Affinia to the public, to the Plaintiff, and to the courts as a legitimate, qualified, in-state trustee when, in fact, it was a sham

24

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

entity created and controlled by an out-of-state law firm to circumvent Washington law.

b)      Unfair because it is oppressive, unscrupulous, and subverts the non-waivable public policy of the DTA. This policy requires a qualified, local trustee to ensure homeowners have a meaningful opportunity to protect their rights and to ensure the neutrality and integrity of the nonjudicial foreclosure process. By using a sham trustee, Defendants caused a substantial, unavoidable injury to Plaintiff through the wrongful loss of her home.

In the Conduct of Trade or Commerce:

93.      All of the Trustee Defendants' acts, including the business of conducting non-judicial foreclosures, managing a purported trustee company, providing legal and operational services for foreclosures, and handling foreclosure sale proceeds, are commercial activities that fall squarely within the conduct of trade or commerce as defined by the CPA.

Injury to Business or Property:

94.      As a result of Defendants' unfair and deceptive acts, Plaintiff suffered profound and quantifiable injury to her property, including the complete loss of her home and all associated equity, valued at approximately $253,658.85.

Causation:

95.      The Trustee Defendants' acts were a direct and proximate cause of Plaintiff's injuries. But for their unlawful scheme to create and operate Affinia as an unqualified sham entity, Affinia would have lacked the legal authority to be appointed as trustee or to conduct the sale. Consequently, no valid foreclosure sale would have occurred, and Plaintiff would not have lost her home. This conduct caused Plaintiff a substantial and unavoidable injury by prolonging her financial distress and homelessness.

Entitlement to Enhanced CPA Remedies

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

96.     Treble Damages and Attorney's Fees: Pursuant to RCW 19.86.090, this Court has the discretion to award treble damages where a defendant's unfair or deceptive acts are marked by willfulness, recklessness, or bad faith. The conduct of the Defendants in this case was not merely negligent; it was undertaken with a willful and reckless disregard for Plaintiff's established legal rights and human dignity, as detailed in the factual allegations herein. Because the Defendants' Affinia, McCalla, and Gonzales' violations of the CPA were egregious and undertaken in bad faith, Plaintiff is entitled to an award of treble damages up to the statutory maximum, in addition to her full actual damages and an award of her reasonable attorneys' fees and costs.

97.     Plaintiff is entitled to an award of treble damages in an amount up to three times her actual damages, not to exceed the statutory maximum of $25,000, in addition to her full actual damages.

98.     <u>Entitlement to Injunctive Relief:</u> Under RCW 19.86.090, Plaintiff is entitled to a permanent injunction to prevent further violations of the CPA. The Washington Supreme Court has long established that a private individual bringing a CPA claim acts as a "private attorney general," Plaintiff has standing to seek prohibitory injunctions to protect the public from Defendants Affinia, McCalla, and Gonzales' ongoing, unlawful business practices. In *Hockley v. Hargitt*, 82 Wn.2d 337, 350-51 (1973), the Washington State Supreme Court held that because the CPA's purpose is "to protect the public," an injured plaintiff may obtain an injunction that goes beyond their own private interests to halt a defendant's unlawful practices.

99.     Therefor, Plaintiff requests a permanent injunction on behalf of the public, enjoining the Defendants Affinia, McCalla, and Gonzales, their agents, and their successors from acting as a foreclosure trustee in Washington without strictly satisfying the statutory qualification requirements of RCW 61.24.010, and from operating any Washington LLC as a mere instrumentality or alter ego of an out-of-state parent company to circumvent the DTA's public policy.

26

---

FIRST AMENDED COMPLAINT                    DEVLIN LAW FIRM
                                          1526 GILPIN AVENUE
                                          WILMINGTON, DE 19806
                                          TEL: (302) 449-9010

**B. Count II.: Violation of the Washington Consumer Protection Act, RCW 19.86, for Failing to Postpone a Nonjudicial Foreclosure Sale (Against Defendants Freedom and Affinia)**

100.     Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

101.     The conduct of Defendants Freedom Mortgage Corporation ("Freedom") and Affinia Default Services, LLC ("Affinia") (collectively, the "Foreclosing Defendants") constitutes unfair and deceptive acts or practices in violation of the CPA, satisfying the five Hangman Ridge elements.

<u>Unfair or Deceptive Act or Practice:</u>

102.     The Foreclosing Defendants committed distinct unfair and deceptive acts:

    a)  <u>Unfair Violation of Statutory Duty to Postpone (Against Freedom and Affinia):</u> By proceeding with the sale after receiving actual, written notice of Plaintiff's pending HAF application, Defendant Affinia violated its direct duty as purported trustee, and Defendant Freedom, in its dual capacity as purported beneficiary and servicer, violated its duties under the DTA and CPA by causing or allowing its agent, Defendant Affinia, to proceed despite having actual knowledge that postponement was legally required. A breach of a specific statutory mandate within the DTA that is designed to protect homeowners is an unfair act under the CPA. *See Klem*, 176 Wn.2d at 787. This conduct is particularly oppressive when directed at a homeowner known by Defendant Freedom (in both its servicer and purported beneficiary capacities) to be contending with severe medical and financial vulnerabilities, which are the very circumstances the HAF program was designed to address.

    b)  <u>Affirmative Deceptive Promise (Against Freedom):</u> On December 19, 2023, Defendant Freedom, through its agent "Whitney," made a clear, unequivocal, and false statement that the foreclosure sale "has already been postponed."

27

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

This affirmative misrepresentation is a quintessential deceptive act because it had the clear capacity to deceive, and did deceive, a reasonable homeowner into believing her home was safe, causing her to forgo protective legal action. The deceptive nature of this promise is compounded by the fact that it was made to a vulnerable consumer under extreme distress, a legally blind, single mother recovering from cancer, who would foreseeably and justifiably cling to such an assurance.

c) Unfair Abuse of Discretionary Duty: Separately and in the alternative, the Trustee Defendants committed an unfair act by abusing their discretionary power to postpone the sale under RCW 61.24.040(10). Upon receiving notice of Ms. Rutzen-Pagni's pending HAF application, the trustee had notice of a circumstance that would make proceeding with the sale inequitable to the debtor. The refusal to exercise discretion to postpone under these circumstances was an oppressive act that sacrificed Ms. Rutzen-Pagni's substantial home equity and her right to reinstate the loan. The ability to postpone a foreclosure sale for up to 120 days is in the DTA specifically to address these kinds of issues. RCW 61.24.040(10). This breach of the duty of good faith under RCW 61.24.010(4) constitutes an unfair act under the CPA. *See Klem*, 176 Wn.2d at 787.

In the Conduct of Trade or Commerce:

103.    These acts occurred in the course of the Defendants' business activities as a purported beneficiary and mortgage servicer (Freedom) and purported foreclosure trustee (Affinia).

Public Interest Impact:

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

104.     The practices employed by Affinia and Freedom have a substantial impact on the public interest. As set forth in RCW 19.86.093(3), an act is injurious to the public interest when it is shown that "the defendant's alleged acts have the capacity to injure other persons." The specific practices employed by Defendants, making false promises to homeowners to halt foreclosure sales while secretly proceeding with them, particularly against vulnerable individuals attempting to utilize public benefit programs like HAF, have a substantial potential for repetition. These practices are injurious to the public interest because they have the clear capacity to deceive and harm other Washington homeowners.

<u>Injury to Business or Property:</u>

105.     Plaintiff suffered the catastrophic injury of losing her home and all the equity contained therein as a direct result of the sale proceeding on December 22, 2023.

<u>Causation:</u>

106.     The Foreclosing Defendants' acts were a direct cause of Plaintiff's injury.

107.     But for their violation of the mandatory duty to postpone under RCW 61.24.048(2)(a), the sale would have been halted by law. Separately, but for Defendant Freedom's false promise, Plaintiff was justifiably induced into forgoing the immediate legal action of obtaining a temporary restraining order to enjoin the sale, which would have prevented the loss of her home.

<u>Entitlement to Enhanced CPA Remedies</u>

108.     For the reasons articulated in Count I, since Defendants Freedom and Affinia, acted with actual, timely notice of a pending HAF application that would cure the default, and they knowingly proceeded with the foreclosure sale in direct contravention of their mandatory, non-discretionary duty under RCW 61.24.048, their course of conduct that went far beyond a technical violation of the law. Compounding this illegal act, Defendant Freedom engaged in deceptive conduct by providing a false promise of safety to induce Plaintiffs' inaction.

29

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

109.    <u>Entitlement to Injunctive Relief:</u> Under RCW 19.86.090, and based on the authority established in *Hockley v. Hargitt*, Plaintiff has standing to seek prohibitory injunctions to protect the public from Defendants' ongoing, unlawful business practices. This includes permanently enjoining Defendant Affinia from continuing to operate as a foreclosing trustee in the State of Washington unless and until it actually adheres to the requirements of the DTA. That will include, but is not limited to, not having any communications with anyone at Defendant McCalla related to obtaining and retaining clients, the decision-making around the operation of the business, including decisions related to how to conduct non-judicial foreclosure sales and/or make discretionary calls about postponing a sale or other independent decisions that a trustee needs to make. The Foreclosing Defendants from proceeding with any foreclosure sale after receiving notice of a borrower's intention to reinstate, and from making false or deceptive promises to homeowners regarding the status of a foreclosure sale.

### C. Count III: Violation of the Washington Consumer Protection Act, RCW 19.86
#### (Against Defendants Bowers and Eastside Funding)

110.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

111.    The conduct of Defendants Joseph Bowers and Eastside Funding, LLC constitutes unfair acts in violation of the CPA, satisfying the five Hangman Ridge elements.

<u>Unfair or Deceptive Act or Practice:</u>

112.    The Purchaser Defendants committed multiple unfair and deceptive acts. These acts are particularly oppressive and unscrupulous because they were committed against a displaced single mother and her children.

113.    <u>Executing a Prohibited Self-Help Eviction:</u> On or about January 7, 2024, the Purchaser Defendants executed an unlawful self-help eviction by changing the locks on Plaintiffs' home. This act is unfair because it willfully circumvents the mandatory judicial

30

process required by RCW 59.12 to illegally evict Plaintiffs', and constitutes an oppressive and unfair act.

114.    <u>Willful Conversion and Interference:</u> The Purchaser Defendants willfully converted the entirety of Plaintiffs' personal property and willfully interfered with her mail.  These acts are particularly unscrupulous and oppressive because they involved the disposal of invaluable and irreplaceable items, including the ashes of her deceased father and the cremated remains of four cherished family pets: three boxer dogs, Bruno, Eliot, and Ruby, and a cat, Mow Mow. his conduct was compounded, upon information and belief, by the Purchaser Defendants' subsequent gross negligence in failing to secure the property, allowing it to be ransacked and desecrated by third parties.

<u>In the Conduct of Trade or Commerce:</u>

115.    These acts occurred in the Purchaser Defendants' course of business as commercial investors who purchase, manage, and turn over foreclosed properties for profit.

<u>Public Interest Impact:</u>

116.    The use of illegal self-help evictions and the conversion of a former owner's property are practices that carry a substantial potential for repetition against other individuals who lose homes to foreclosure. Such conduct impacts the public interest by encouraging lawlessness and undermining the statutory procedures that govern post-foreclosure transitions.

<u>Injury to Business or Property:</u>

117.    As a direct result of these foreseeable acts, Plaintiffs suffered multiple injuries to their property, including the loss of the entire contents of her home, the costs incurred for temporary housing after being rendered homeless, and the financial losses and remediation costs arising from identity theft.

<u>Causation:</u>

118.    The Purchaser Defendants' unfair acts were the direct and proximate cause of Plaintiff being rendered homeless, the loss of all her personal possessions, and the subsequent

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

harm from identity theft. But for their unlawful self-help eviction and conversion of her property, Plaintiff would not have suffered these specific and devastating post-sale injuries.

    <u>Entitlement to Enhanced CPA Remedies:</u>

    119.   <u>Treble Damages and Attorney's Fees:</u> Pursuant to RCW 19.86.090, and for the reasons articulated in Count I, the Purchaser Defendants, Bowers and Eastside Funding, engaged in a flagrantly unlawful self-help eviction and willfully converted the entirety of Plaintiff's personal property, including items of profound sentimental value, demonstrating a callous and reckless indifference to Plaintiff's rights as an occupant. Plaintiff is entitled to an award of treble damages in an amount up to three times her actual damages, not to exceed the statutory maximum of $25,000, in addition to her full actual damages.

    120.   <u>Entitlement to Injunctive Relief:</u> Under RCW 19.86.090, and based on the authority established in *Hockley v. Hargitt*, Plaintiff has standing to seek prohibitory injunctions to protect the public from Defendants' ongoing, unlawful business practices. This includes permanently enjoining the Purchaser Defendants (Bowers and Eastside Funding) from engaging in illegal self-help evictions in violation of RCW 59.12 and from wrongfully converting the personal property of former occupants.

    **D. Count IV**: **Breach of Trustee's Duties under RCW 61.24 et al, in Violation of the Washington Consumer Protection Act, RCW 19.86, for Bad-Faith Withholding of Surplus Funds and Breach of Duty of Good Faith (Against Defendants Affinia, McCalla, and Gonzales)**

    121.   Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

    122.   The conduct of Defendants Affinia , McCalla, and Gonzales in orchestrating and executing the wrongful foreclosure of Plaintiff's home constitutes multiple unfair and deceptive acts or practices in violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86, *et seq*. The Trustee Defendants' conduct satisfies each of the five elements required to establish a CPA violation. *Hangman Ridge*, 105 Wn.2d at 780, 719 P.2d 531.

Unfair or Deceptive Act or Practice:

123.    The Trustee Defendants committed a series of unfair and deceptive acts by violating their explicit, non-delegable statutory duties under Washington's Deed of Trust Act (DTA). An act is "deceptive" if it has the capacity to deceive a substantial portion of the public, and an act is "unfair" if it is oppressive, unscrupulous, or causes substantial, unavoidable injury to consumers. *Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013).

124.    Defendants Affinia and its controlling principals, McCalla and Gonzales, systematically and flagrantly breached these fundamental duties through a series of unlawful acts and omissions. These breaches include, but are not limited to:

  a)    Breach of the Non-Discretionary Duty to Postpone Sale: The Trustee Defendants committed a series of unfair acts by flagrantly violating their non-delegable statutory duty of good faith owed to the borrower under RCW 61.24.010(4). A foreclosure trustee's breach of its duty of good faith is a unfair act under the CPA as the Washington Supreme Court has held in several cases. *See, Klem v. Washington Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). This abdication of good faith is evidenced by a pattern of oppressive and unscrupulous conduct separate from, and in addition to, the violations alleged in other counts, including:

  b)    Refusal to Timely Deposit Surplus Funds: The Trustee Defendants committed a flagrant and bad-faith breach of their duty under RCW 61.24.080 by failing to deposit the surplus funds from the sale with the court clerk for over fifteen months. This bad-faith retention of funds was compounded by Defendants' self-dealing, wherein they unlawfully retained $1,200.00 of Ms. Rutzen-Pagni's equity for grossly excessive "attorney's fees" related to the deposit they had failed to timely make. Moreover, upon information and belief, Defendants made a conscious choice not to provide Plaintiff with notice of the

33

FIRST AMENDED COMPLAINT

funds, effectively concealing their existence from a homeowner they had rendered homeless. This course of conduct is the antithesis of good faith.

In the Conduct of Trade or Commerce:

125.    All of the Trustee Defendants' acts and omissions, including the handling and disposition of foreclosure sale proceeds, occurred in the course of their business of conducting non-judicial foreclosures for profit and therefore fall squarely within the conduct of trade or commerce as defined by the CPA. RCW 19.86.020.

Public Interest Impact:

126.    The acts and practices of the Trustee Defendants are injurious to the public interest pursuant to RCW 19.86.093(3). That statute provides that a claimant may establish public interest impact by demonstrating that the defendant's alleged act or practice "(c) has the capacity to injure other persons."

127.    Here, the Trustee Defendants' bad-faith withholding of a homeowner's surplus equity is a practice with a significant and inherent capacity to injure other vulnerable homeowners across Washington. A trustee's failure to promptly remit surplus funds deprives homeowners of money to which they are legally entitled, often at a time of extreme financial distress. This conduct undermines the public's confidence in the fairness and integrity of the Deed of Trust Act, a system that fundamentally relies on the trustee's good faith to function as the legislature intended.

Injury to Business or Property:

128.    As a direct result of the Trustee Defendants' unfair and deceptive acts concerning the surplus funds, Plaintiff suffered profound and quantifiable injury to her property, including: (a) the loss of the use of her $32,258.82 in surplus funds, which were wrongfully withheld for over fifteen months and diminished by an improper $1,200 fee, during which time she was homeless and in desperate financial need; and (b) consequential financial damages incurred because she lacked access to her own equity to secure stable housing and mitigate her harm.

34

FIRST AMENDED COMPLAINT

Causation:

129.    The Trustee Defendants' acts were a direct and proximate cause of Plaintiff's injuries. But for their bad-faith delay in depositing the surplus funds and their unlawful retention of fees, Plaintiff would have had critical financial resources to secure stable housing and avoid the cascading financial and emotional harms she suffered after the wrongful sale.

Entitlement to Enhanced CPA Remedies:

130.    Treble Damages and Attorney's Fees: Pursuant to RCW 19.86.090, the Trustee Defendants' conduct was willful and undertaken in bad faith. They acted with actual, timely notice of a pending HAF application that would cure the default and knowingly proceeded with the foreclosure sale, and then callously withheld the proceeds from a displaced and vulnerable family for over a year. Plaintiff is therefore entitled to an award of treble damages up to the statutory maximum, in addition to her full actual damages and an award of her reasonable attorneys' fees and costs.

131.    Entitlement to Injunctive Relief: Pursuant to RCW 19.86.090, the Trustee Defendants' conduct was willful and undertaken in bad faith. They knowingly and intentionally withheld substantial funds from a displaced and vulnerable family for over a year for their own financial benefit or convenience. Plaintiff is therefore entitled to an award of treble damages up to the statutory maximum, in addition to her full actual damages and an award of her reasonable attorneys' fees and costs arising from this violation. RCW 19.86.090.

### E.  COUNT V: Conversion
### (Against Bowers and Eastside Funding)

132.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.  At all times relevant, and specifically on or about January 7, 2024, Plaintiff was the rightful owner and had the immediate right to possession of all personal property located inside her home at 5604 134th St Ct. NW, Gig Harbor, WA 98332.

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

133.    As alleged herein, all Plaintiffs had taken numerous affirmative steps demonstrating she had not abandoned the home or her possessions. These indicia of continued occupancy included paying utility bills, arranging for the care of her pets, periodically returning to collect her mail, and having left for the holiday with only a single weekend bag of clothing.

134.    On or about January 7, 2024, Defendants Bowers and Eastside, acting through their agents, intentionally interfered with and exercised wrongful dominion and control over all Plaintiffs' personal property. This wrongful interference was accomplished by unlawfully changing the locks on the home, constituting an illegal self-help eviction that barred all Plaintiffs from accessing their possessions.

135.    Shortly thereafter, the Purchaser Defendants consummated the conversion by seizing, removing, and disposing of the entire contents of the 3,500-square-foot home without Plaintiffs' consent and without legal justification or excuse. These actions were taken without a court order, a writ of restitution, or any other legal authority, and in direct contravention of the public policy embodied in Washington law, which requires those who take possession of real property to handle the personal property of former occupants with reasonable care and pursuant to statutory procedures. *See, e.g.,* Chapter 59.12 RCW.

136.    The property converted included not only all furniture, clothing, and household goods, but also invaluable and irreplaceable items of profound sentimental value. This includes the ashes of her deceased father, all family photographs, all of the minor children's belongings, (including clothes, toys, books, and personal items), and the cremated remains of four cherished family pets: three boxer dogs (Bruno, Eliot, and Ruby) and a cat (Mow Mow). Defendants' conversion of Plaintiff's personal mail directly and foreseeably contributed to her identity being stolen.

137.    As a direct and proximate result of the Purchaser Defendants' conversion, all Plaintiffs have been damaged in an amount equal to the full fair market and replacement value of

FIRST AMENDED COMPLAINT                              DEVLIN LAW FIRM
                                                    1526 GILPIN AVENUE
                                                    WILMINGTON, DE 19806
                                                    TEL: (302) 449-9010

the personal property converted. Furthermore, they are entitled to recover consequential damages for the loss of items of unique and sentimental value, in an amount to be proven at trial.

### F.  COUNT VI: Promissory Estoppel
   (Against Defendant Freedom Mortgage Corporation)

138.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

139.    On December 19, 2023, Defendant Freedom, through its agent "Whitney" (employee #4338), made a clear, definite, and unequivocal promise to Plaintiff that the foreclosure sale on her home "has already been postponed" and would not proceed as scheduled.

140.    Defendant Freedom, a sophisticated mortgage servicer, made this promise knowing, or reasonably should have known, that Plaintiff, a vulnerable homeowner under extreme distress, would rely on this definitive assurance from her loan servicer.

141.    Plaintiff justifiably and foreseeably relied on Defendant Freedom's promise to her significant detriment. Specifically, in direct reliance on the assurance that her home was safe from foreclosure, she refrained from retaining counsel and seeking an emergency temporary restraining order from the court to enjoin the sale. Her reliance also included making arrangements to leave her home with her children for the holiday to escape the distressing environment caused by the foreclosure listing.

142.    Defendant Freedom subsequently breached its promise by allowing or instructing Defendant Affinia to proceed with the sale on December 22, 2023. Injustice can only be avoided by the enforcement of Defendant Freedom's promise.

143.    As a direct and proximate result of Plaintiff's detrimental reliance on Defendant Freedom's promise, she suffered the loss of her home and all associated damages, for which Defendant Freedom is liable.

37

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

### G.  COUNT VII.: Wrongful Eviction and Trespass
### (Against Defendants Joseph Bowers and Eastside Funding, LLC)

144.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

145.    At all times before and on January 7, 2024, all Plaintiffs were the lawful occupant of the Property and had not abandoned the premises. She therefore had the legal right to exclusive possession of her home, which could only be terminated through a valid judicial proceeding.

146.    On or about January 7, 2024, Defendants Bowers and Eastside Funding, LLC, through their agents, committed a wrongful eviction and trespass by intentionally and unlawfully changing the locks on Plaintiffs' home, thereby physically barring all Plaintiffs from the premises.

147.    This extrajudicial dispossession was executed without a court order and without a lawfully executed writ of restitution mandated by Chapter 59.12 RCW, and therefore constituted both the tort of wrongful eviction and the tort of trespass.

148.    As a direct and proximate result of the Purchaser Defendants' wrongful eviction and trespass, Plaintiff Rutzen-Pagni and her children were rendered homeless and suffered significant actual and consequential damages, including but not limited to the costs of temporary housing, transportation, and the loss of personal property.

149.    Furthermore, as a direct and proximate cause of the Defendants' intentional, unlawful, and intrusive conduct, all Plaintiffs suffered severe emotional distress, inconvenience, and loss of enjoyment of life, for which she is entitled to general damages.

### H.  COUNT VIII: Violation of the Real Estate Settlement Procedures Act
### (RESPA), 12 U.S.C. § 2605
### (Against Defendant Freedom Mortgage Corporation)

150.    Plaintiffs incorporate by reference all allegations contained in the preceding paragraphs as if fully set forth herein.

38

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

151.    The loan at issue is a "federally related mortgage loan" subject to RESPA, 12 U.S.C. § 2601, *et seq.*, and its implementing regulation, Regulation X, 12 C.F.R. Part 1024. At all relevant times, Defendant Freedom was the "servicer" of the loan as defined by 12 U.S.C. § 2605(i)(2) and was subject to all applicable servicing duties.

Prohibited Dual Tracking in Violation of 12 C.F.R. § 1024.41(g)

152.    On or before December 18, 2023, Defendant Freedom received confirmation of Plaintiff's pending application for relief through the Washington State Homeowner Assistance Fund ("HAF"). The HAF application contained Plaintiff's financial information, hardship documentation, and all information necessary for Defendant Freedom to evaluate Plaintiff for available loss mitigation options. The application, therefore, constituted a facially complete loss mitigation application for purposes of 12 C.F.R. § 1024.41(c).

153.    Upon receipt of Plaintiff's facially complete loss mitigation application, Regulation X strictly prohibited Defendant Freedom from conducting a trustee's sale. Specifically, 12 C.F.R. § 1024.41(g) provides that if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required for a foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not "conduct a foreclosure sale."

154.    In direct violation of its duties under 12 C.F.R. § 1024.41(g), Defendant Freedom failed to halt the foreclosure process and knowingly allowed its agent, Defendant Affinia, to proceed with and conduct the wrongful foreclosure sale of Plaintiff's home on December 22, 2023. This act of prohibiting "dual tracking" was a direct and proximate cause of the loss of Plaintiff's home.

Evidence of a Pattern of Noncompliance: Failure to Correct Error and Provision of False Information

155.    Further evidencing its disregard for its servicing obligations, on December 18, 2023, Defendant Freedom also received a written communication from Ms. Hopkins, the HUD

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

housing counselor, explaining that Ms. Rutzen-Pagni has completed a HAF application and that the foreclosure sale scheduled for December 22, 2023 had to be continued for at least thirty days to allow Rutzen-Pagni's HAP application to be fully considered. Proceeding with the sale would be a servicing error.

156.     Despite acknowledging receipt of the communication by providing a substantive, albeit false, response, Defendant Freedom failed to conduct a reasonable investigation or correct the error. Instead, on December 19, 2023, Defendant Freedom's agent, "Whitney," provided false information to Plaintiff, stating that the sale "has already been postponed," when in fact it had not been. Defendant Freedom thereafter took no action to prevent the sale.

/ /

/ /

### Pattern or Practice of Noncompliance and Entitlement to Damages

157.     Defendant Freedom's multiple, distinct failures to comply with its servicing obligations, including engaging in prohibited dual tracking in violation of § 1024.41(g) and providing false information in response to an asserted error, constitute a pattern or practice of noncompliance with the requirements of RESPA.

158.     Pursuant to 12 U.S.C. § 2605(f), Plaintiff is entitled to recover her actual damages, statutory damages for Defendant Freedom's pattern or practice of noncompliance, and her reasonable attorneys' fees and costs incurred in prosecuting this action.

### Actual Damages Proximately Caused by Defendant's Violations

159.     As a direct and proximate result of Defendant Freedom's unlawful dual tracking and wrongful foreclosure sale, Plaintiff and her children were rendered homeless, precipitating a cascade of severe financial, physical, and psychological harm.

160.     Having lost their home, Plaintiff and her two children were forced to move between various hotels and temporary rentals, incurring significant costs for unstable, short-term housing. The wrongful foreclosure destroyed Plaintiff's credit, impairing her ability to secure

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

stable housing and forcing her to accept a new rental in a different area and of a lesser quality than her prior home. Furthermore, after the wrongful sale, Plaintiff discovered on or about January 15, 2024, that her home had been completely emptied. Upon information and belief, all of her family's personal property was removed from the home and disposed of without her consent. Additionally, important personal and financial documents mailed to the address were discarded, and Plaintiff has since been the victim of identity theft.

161. Emotional and Psychological Distress. The trauma of the wrongful foreclosure and displacement has caused Plaintiff to suffer from severe and ongoing emotional distress, which has manifested physically and psychologically. Plaintiff experiences panic attacks, flashbacks to the events, Plaintiff experiences panic attacks, flashbacks to specific traumatic events such as being threatened with eviction from hotels when her payment card was declined, and persistent fear and anxiety. For a period, Plaintiff internalized the harm and blamed herself for her family's circumstances, but has since come to realize this was a harm inflicted upon her and her children. The distress has been so severe that it has caused physical illness, including stress-induced vomiting, and has required Plaintiff to seek an increase in her psychiatric medication to manage her symptoms. Plaintiff has been forced to endure profound humiliation, including having to file police reports simply to obtain refills of essential medications left behind in her home.

162. Consequential Health Impacts. The instability of displacement directly prevented Plaintiff from obtaining timely medical care for a worsening vision condition. The loss of her home also resulted in the loss of her prescription medications, forcing Plaintiff to endure the humiliating process of filing police reports to prove the medications were lost and not being abused, simply to obtain necessary refills.

163. Familial Harm. The trauma was not limited to the Plaintiff. Her children have been deeply impacted, developing a persistent fear that they will be removed from their home at any moment. The crisis culminated in Plaintiff's daughter attempting self-harm, which required

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

the intervention of the Department of Children, Youth, and Families (DCYF) to ensure her safety.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Judy Rutzen-Pagni, individually and as next friend and natural guardian of her minor children, A.A.P. and A.F.P., based on the Court's finding that the December 22, 2023, foreclosure sale was void *ab initio* and therefore not subject to the remedial limitations of RCW 61.24.127(2), and pursuant to the Court's inherent equitable power and authority under RCW 19.86.090 to remedy and prevent future harm to the public, Plaintiffs respectfully pray for the following relief:

### A.  For Monetary Damages:

On behalf of Plaintiff Judy Rutzen-Pagni:

1. Special and Economic Damages: In an amount to be proven at trial, including but not limited to:

   a) The full value of all lost equity in her home at the time of the wrongful foreclosure and the subsequent loss of appreciation, in an amount to be fully proven at trial but not less than $253,658.85;

   b) The full fair market and replacement value of all her personal property converted by Defendants;

   c) All costs incurred for temporary and emergency housing resulting from her wrongful displacement;

   d) All financial losses, credit repair costs, and other expenses incurred as a result of the identity theft proximately caused by Defendants' conduct;

   e) All past and future medical, psychological, and therapeutic expenses incurred to treat her PTSD and other conditions caused by Defendants' conduct; and

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

f) Lost wages and loss of future earning capacity.

**B.  General and Non-Economic Damages:**

1.      In an amount to be proven at trial, for the severe emotional distress, trauma, PTSD, anxiety, humiliation, and loss of enjoyment of life she has suffered and will continue to suffer.

<u>On behalf of the minor children, A.A.P. and A.F.P.</u>

**C.  Special and Economic Damages:**

1.  In an amount to be proven at trial, including but not limited to:

a.  The full fair market and replacement value of all their personal property converted by Defendants, including clothing, books, toys, and other possessions; and

b.  All past and future medical, psychological, and therapeutic expenses incurred to treat their anxiety, trauma, and other conditions caused by Defendants' conduct.

**D.  General and Non-Economic Damages:**

1.  In an amount to be proven at trial, for the severe emotional distress, trauma, anxiety, fear, humiliation, and loss of enjoyment of life they have suffered and will continue to suffer.

**E.  For Statutory and Other Monetary Relief:**

1.  Pursuant to the Washington Consumer Protection Act, RCW 19.86.090, for an award to Plaintiffs of treble damages for all injuries to business or property caused by Defendants' unfair and deceptive acts, up to the statutory maximum for each violation; and

43

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

2. Against Defendant Freedom Mortgage Corporation, pursuant to RESPA, 12 U.S.C. § 2605(f), for Plaintiff's actual damages and for statutory damages due to its pattern or practice of noncompliance;

3. For an award of Plaintiffs' reasonable attorneys' fees and all costs of suit, pursuant to RCW 19.86.090, 12 U.S.C. § 2605(f), and all other applicable legal and equitable grounds; and

4. For an award of prejudgment and post-judgment interest on all monetary damages awarded, as permitted by law.

**F.  For Permanent Injunctive Relief:**

1. For a permanent injunction, pursuant to RCW 19.86.090 and the Court's inherent equitable power, enjoining and restraining all Defendants, their officers, agents, and successors from engaging in the unlawful practices detailed in this Complaint, including but not limited to:

   a)  (Against Trustee Defendants) Acting as a foreclosure trustee in Washington without strictly satisfying all statutory qualification requirements;

   b)  (Against Foreclosing Defendants) Conducting any foreclosure sale in violation of the mandatory postponement duties or making false promises to homeowners regarding the status of a sale; and

   c)  (Against Purchaser Defendants) Engaging in unlawful self-help evictions or converting the personal property of former occupants.

2. Take all necessary affirmative steps to correct public records and credit reports to remove all adverse information related to the wrongful foreclosure and sale.

44

FIRST AMENDED COMPLAINT

### G. For Contingent Equitable Relief Regarding Title to Real Property:

Alternatively, and only in the event that discovery establishes that the subsequent transferees of the Property are not bona fide purchasers for value, Plaintiffs pray for an order:

1. Declaring the Trustee's Sale conducted on December 22, 2023, to be void and without legal effect;

2. Setting aside and declaring void the Trustee's Deed Upon Sale recorded under Pierce County Auditor's File No. 202401050012 and all subsequent conveyances; and

3. Quieting title to the Property in the name of Plaintiff Judy Rutzen-Pagni, subject to any valid liens existing as of December 21, 2023.

### H. For All Other Relief:

For such other and further relief as this Court deems just and proper.

Dated this 21st day of October, 2025.

DEVLIN LAW FIRM LLC

*s/ Christina L. Henry*
Christina Henry, WSBA No. 31273
Attorney for Plaintiffs
6100 219th St SW
Ste 480, PMB 398
Mountlake Terrace, WA 98043-2222
Tel# 206-319-0077
*chenry@devlinlawfirm.com*
Attorney for the Plaintiff

FIRST AMENDED COMPLAINT

DEVLIN LAW FIRM
1526 GILPIN AVENUE
WILMINGTON, DE 19806
TEL: (302) 449-9010

# EXHIBIT A

For reference only, not for re-sale.

Electronically Recorded

Pierce County, WA     RJOHNSO
02/20/2018          7:43 AM

Pages: 24          Fee: $98.00

**Return To:**
First American Title Ins Co
4795 Regent Blvd, 1006-A
Irving, TX 75063
ATTN: Recording

**Assessor's Parcel or Account Number:** 3000070060
**Abbreviated Legal Description:** LOT 6, TRILLIUM PARK, REC 9202280533

[Include lot, block and plat or section, township and range]          Full legal description located on page 3
**Trustee:** First American Title Ins. Co.

**Lender:** Freedom Mortgage Corporation

**Additional names are shown on page 2.**

## Deed of Trust

| | |
|---|---|
| | FHA Case No. |
| | ████████████ |

**DEFINITIONS**                              **MIN:** 1000730-0101738987-3

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 10, 12, 17, 19 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 15.

(A) **"Security Instrument"** means this document, which is dated January 23, 2018     , together with all Riders to this document.

(B) **"Borrower"** is Alan G. Pagni And Judy A. Pagni, Husband And Wife

Borrower is the trustor under this Security Instrument.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™  VMP ®                                          /30/2014
Wolters Kluwer Financial Services                           VMP4N(WA) (1506).00
                                                              Page 1 of 17

(C) **"Lender"** is Freedom Mortgage Corporation

Lender is a Corporation
organized and existing under the laws of The State of New Jersey
Lender's address is 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ  08054

Lender is the beneficiary under this Security Instrument.

(D) **"Trustee"** is First American Title Ins. Co.

(E) **"MERS"** is Mortgage Electronic Registration Systems, Inc. Lender has appointed MERS as the nominee for this Loan, and attached a MERS Rider to this Security Instrument, to be executed by Borrower, which further describes the relationship between Lender and MERS, and which is incorporated into and amends and supplements this Security Instrument.

(F) **"Note"** means the promissory note signed by Borrower and dated January 23, 2018 . The Note states that Borrower owes Lender Five Hundred Fifteen Thousand Four Hundred Sixty Five and 00/100
Dollars (U.S. $515,465.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than February 1, 2048 .

(G) **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

(H) **"Loan"** means the debt evidenced by the Note, plus interest, and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

- [ ] Adjustable Rate Rider
- [ ] Condominium Rider
- [x] Planned Unit Development Rider
- [x] Other MERS Rider
- [ ] Rehabilitation Loan Rider

(J) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(WA) (1506).00
Page 2 of 17

For reference only, not for re-sale.

For reference only, not for re-sale.

(M) **"Escrow Items"** means those items that are described in Section 3.

(N) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) **"Secretary"** means the Secretary of the United States Department of Housing and Urban Development or his designee.

(S) **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                                                          of Pierce                                   :
        *(Type of Recording Jurisdiction)*                        *(Name of Recording Jurisdiction)*
Real property in the City of GIG HARBOR, County of PIERCE, State of
Washington, described as follows:
LOT 6, TRILLIUM PARK, ACCORDING TO THE PLAT THEREOF, RECORDED FEBRUARY 26,
1992, UNDER RECORDING NUMBER 9202280533, IN PIERCE COUNTY, WASHINGTON.

FOR INFORMATION ONLY: LOT 6, TRILLIUM PARK, REC 9202280533

APN #: 3000070060

PAGNI
53682984                                                WA
FIRST AMERICAN ELS
DEED OF TRUST

264236184
FHA Deed of Trust With MERS-WA                                              8/30/2014
Bankers Systems™ VMP ®                                         VMPN(WA) (1506).00
Wolters Kluwer Financial Services                                       Page 3 of 17

which currently has the address of 5604 134th Street Ct NW

(Street)

Gig Harbor                        (City), Washington 98332     (Zip Code)
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 14. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
) (T506).00
Page 4 of 17

For reference only, not for re-sale.

For reference only, not for re-sale.

2.   **Application of Payments or Proceeds.** Except as expressly stated otherwise in this Security Instrument or the Note, all payments accepted and applied by Lender shall be applied in the following order of priority:

First, to the Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly mortgage insurance premiums;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and,

Fifth, to late charges due under the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.   **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums to be paid by Lender to the Secretary or the monthly charge by the Secretary instead of the monthly Mortgage Insurance premiums. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 14 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

10/2014
VMP4N(WA) (1506).00
Page 5 of 17

For reference only, not for re-sale.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

    Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

5.  **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

0/2014
06) 00
Page 6 of 17

and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

30/2014
VMP4N(WA) (1506).00
Page 7 of 17

For reference only, not for re-sale.

For reference only, not for re-sale.

(b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that this requirement shall cause undue hardship for the Borrower or unless extenuating circumstances exist which are beyond Borrower's control.

7.    **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

If condemnation proceeds are paid in connection with the taking of the property, Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts, and then to payment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments or change the amount of such payments.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.    **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

30/2014
VMP4N(WA) (1506).00
Page 8 of 17

repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(WA) (1506).00
Page 9 of 17



In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 17, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of

For reference only, not for re-sale.

For reference only, not for re-sale.

Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 19) and benefit the successors and assigns of Lender.

**13. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. Lender may collect fees and charges authorized by the Secretary. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment with no changes in the due date or in the monthly payment amount unless the Lender agrees in writing to those changes. Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**14. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**15. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
30/2014
VMP4N(WA) (1506).00
Page 11 of 17

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**16. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to reinstatement of a mortgage. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. However, Lender is not required to reinstate if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding; (ii) reinstatement will preclude foreclosure on different grounds in the future; or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 17.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(WA) (1506).00
Page 12 of 17



For reference only, not for re-sale.

19. **Sale of Note; Change of Loan Servicer; Notice of Grievance**. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this Section. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

20. **Borrower Not Third-Party Beneficiary to Contract of Insurance**. Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower acknowledges and agrees that the Borrower is not a third party beneficiary to the contract of insurance between the Secretary and Lender, nor is Borrower entitled to enforce any agreement between Lender and the Secretary, unless explicitly authorized to do so by Applicable Law.

21. **Hazardous Substances**. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

10/2014
VMP4N(WA) (1506).00
Page 13 of 17

small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 17 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower; by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™  VMP ®
Wolters Kluwer Financial Services

9/30/2014
VMP4N(WA) (1506).00
Page 14 of 17



For reference only, not for re-sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

23. **Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

24. **Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

26. **Use of Property.** The Property is not used principally for agricultural purposes.

27. **Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

0/2014
VMP4N(WA) (1506).00
Page 15 of 17

For reference only, not for re-sale.

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.



_____  (Seal)
Judy A. Pagni                    -Borrower

_____  (Seal)
Alan G. Pagni                    -Borrower

_____  (Seal)
                                 -Borrower

_____  (Seal)
                                 -Borrower

☐  Refer to the attached *Signature Addendum* for additional parties and signatures.

264236184
FHA Deed of Trust With MERS-WA                                    9/30/2014
Bankers Systems™ VMP ®                                    VMP4N(WA) (1506).00
Wolters Kluwer Financial Services                             Page 16 of 17

For reference only, not for re-sale.

**Acknowledgment**
State of Washington
County of Pierce
I certify that I know or have satisfactory evidence that

Judy A. Pagni , Alan G. Pagni

is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument and acknowledged it to be his/her/their free and voluntary act for the uses and purposes mentioned in the instrument.

```
+--------------------------------------+
|            Notary Public              |
|         State of Washington           |
|             JOY OLSEN                  |
| My Appointment Expires Mar 13, 2018    |
+--------------------------------------+
```

*Dated:* 01/23/18

*Notary Public in and for the State of Washington*   Joy Olsen

*My commission expires:* 03/13/18

*Residing at* Pierce

**Loan Origination Organization:** Freedom Mortgage Corporation
**NMLS ID:** 2767
**Loan Originator:** Dominique Shari Deanna Fowler
**NMLS ID:** 1471733

264236184
FHA Deed of Trust With MERS-WA
Bankers Systems™ VMP ®                                          /2014
Wolters Kluwer Financial Services                        VMP4N(WA) (1606).00
                                                              Page 17 of 17

# Mortgage Electronic Registration Systems, Inc. Rider
## (MERS Rider)

FHA Case No.

**MIN:** 1000730-0101738987-3

THIS MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. RIDER ("MERS Rider") is made this 23rd day of January, 2018 , and is incorporated into and amends and supplements the Deed of Trust (the "Security Instrument") of the same date given by the undersigned (the "Borrower," whether there are one or more persons undersigned) to secure Borrower's Note to Freedom Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument, which is located at:
                         5604 134th Street Ct NW
                         Gig Harbor, WA 98332
                              *(Property Address)*

In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree that the Security Instrument is amended as follows:

## A.  DEFINITIONS

1.  The Definitions section of the Security Instrument is amended as follows:

   **"Lender"** is Freedom Mortgage Corporation

   Lender is a Corporation
   organized and existing under the laws of The State of New Jersey                         .
   Lender's address is 907 Pleasant Valley Av Ste 3
   Mount Laurel, NJ 08054                              . Lender is the beneficiary
   under this Security Instrument. The term "Lender" includes any successors and assigns of Lender.

   **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is the Nominee for Lender and is acting solely for Lender. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. MERS is appointed as the Nominee for Lender to exercise the rights, duties and obligations of Lender as Lender may from time to time direct, including but not limited to appointing a successor trustee, assigning, or releasing, in whole or in part this Security Instrument, foreclosing or directing Trustee to institute foreclosure of this Security Instrument, or taking such other actions as Lender may deem necessary or appropriate under this Security Instrument. The term "MERS" includes any successors and assigns of MERS. This appointment shall inure to and bind MERS, its successors and assigns, as well as Lender, until MERS' Nominee interest is terminated.

2.  The Definitions section of the Security Instrument is further amended to add the following definition:

   **"Nominee"** means one designated to act for another as its representative for a limited purpose.

## B.  TRANSFER OF RIGHTS IN THE PROPERTY

The Transfer of Rights in the Property section of the Security Instrument is amended to read as follows:

For reference only, not for re-sale.

For reference only, not for re-sale.

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
County                                                    of Pierce                                           :
        *(Type of Recording Jurisdiction)*                    *(Name of Recording Jurisdiction)*

Real property in the City of GIG HARBOR, County of PIERCE, State of Washington, described as follows:
LOT 6, TRILLIUM PARK, ACCORDING TO THE PLAT THEREOF, RECORDED FEBRUARY 26, 1992, UNDER RECORDING NUMBER 9202280533, IN PIERCE COUNTY, WASHINGTON.

FOR INFORMATION ONLY: LOT 6, TRILLIUM PARK, REC 9202280533

APN #: 3000075060

which currently has the address of 5604 134th Street Ct NW
                                                                        *(Street)*
Gig Harbor                                    , WA                       98332
                *(City)*                              *(State)*          *(Zip Code)*
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Lender, as the beneficiary under this Security Instrument, designates MERS as the Nominee for Lender. Any notice required by Applicable Law or this Security Instrument to be served on Lender must be served on MERS as the designated Nominee for Lender. Borrower understands and agrees that MERS, as the designated Nominee for Lender, has the right to exercise any or all interests granted by Borrower to Lender, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, assigning and releasing this Security Instrument, and substituting a successor trustee.

C. **NOTICES**

Section 14 of the Security Instrument is amended to read as follows:

14. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by

264236189
FHA MERS RIDER
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services
2/1/2015
VMP315HR (1502).00
Page 2 of 4

For reference only, not for re-sale.

mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Borrower acknowledges that any notice Borrower provides to Lender must also be provided to MERS as Nominee for Lender until MERS' Nominee interest is terminated. Any notice provided by Borrower in connection with this Security Instrument will not be deemed to have been given to MERS until actually received by MERS. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

## D.   SALE OF NOTE; CHANGE OF LOAN SERVICER; NOTICE OF GRIEVANCE

Section 19 of the Security Instrument is amended to read as follows:

**19. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. Lender acknowledges that until it directs MERS to assign MERS' Nominee interest in this Security Instrument, MERS remains the Nominee for Lender, with the authority to exercise the rights of Lender. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 14) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 17 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 19.

## E.   SUBSTITUTE TRUSTEE

Section 24 of the Security Instrument is amended to read as follows:

**24. Substitute Trustee.** In accordance with Applicable Law, Lender or MERS may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

FHA MERS RIDER
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

015
VMP315HR (1502).00
Page 3 of 4

For reference only, not for re-sale.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this MERS Rider.



_____ (Seal)
Judy A. Pagni                    -Borrower

_____ (Seal)
Alan G. Pagni                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

264236189
FHA MERS RIDER
Bankers Systems™ VMP ®
Wolters Kluwer Financial Services

2/1/2015
VMP315HR (1502).00
Page 4 of 4

For reference only, not for re-sale.



# Planned Unit Development Rider

| FHA Case No. |
|---|
| ███████████ |

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 23rd  day of January, 2018  ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed
of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned
("Borrower") to secure Borrower's Note ("Note") to
Freedom Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument
and located at:

5694 134th Street Ct NW
Gig Harbor, WA 98332
(Property Address)

The Property Address is a part of a planned unit development ("PUD") known as
Trillium Park

(Name of Planned Unit Development)

**PUD COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common
areas and facilities), acting as trustee for the homeowners, maintains, with a
generally accepted insurance carrier, a "master" or "blanket" policy insuring the
Property located in the PUD, including all improvements now existing or
hereafter erected on the mortgaged premises, and such policy is satisfactory to
Lender and provides insurance coverage in the amounts, for the periods, and
against the hazards Lender requires, including fire and other hazards included
within the term "extended coverage," and loss by flood, to the extent required
by the Secretary, then: (i) Lender waives the provision in Paragraph 3 of this
Security Instrument for the monthly payment to Lender of one-twelfth of the
yearly premium installments for hazard insurance on the Property, and (ii)
Borrower's obligation under Paragraph 5 of this Security Instrument to maintain
hazard insurance coverage on the Property is deemed satisfied to the extent
that the required coverage is provided by the Owners Association policy.

264236187
FHA PUD Rider
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

September 2014
VMP589U (1502).00
Page 1 of 3

For reference only, not for re-sale.

Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C.  If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

264236187
FHA PUD Rider
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

September 2014
VMP589U (1502).00
Page 2 of 3



By signing below, Borrower accepts and agrees to the terms and provisions contained in this
PUD Rider.

_____ (Seal)
Judy A. Pagni                  **-Borrower**

_____ (Seal)
Alan G. Pagni                  **-Borrower**

_____ (Seal)
                               **-Borrower**

_____ (Seal)
                               **-Borrower**

☐ Refer to the attached Signature Addendum for additional parties and signatures.

264236187                                      0101738987

FHA PUD Rider                                   September 2014
Bankers Systems™ VMP®                           VMP589U (1502).00
Wolters Kluwer Financial Services               Page 3 of 3

For reference only, not for re-sale.

Unofficial Document

EXHIBIT B

**202202140004**

Electronically Recorded

Pierce County, WA    RJOHNSO
02/14/2022        8:20 AM
Pages: 1        Fee: $18.00

**When Recorded Mail To:**
Freedom Mortgage Corporation
Assignment of Mortgage Department
20 Lake Center Drive
Marlton, NJ 08053

## ASSIGNMENT OF DEED OF TRUST

RECORDING REQUESTED BY:
**Freedom Mortgage Corporation**
**Nirmala Tanikonda**
**20 Lake Center Drive**
**Marlton, NJ 08053**
Loan #:
MIN: **10007300101758987**
MERS Phone #: **(888) 679-6377**

For good and valuable consideration, the sufficiency of which is hereby acknowledged, **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Freedom Mortgage Corporation, its successors and assigns,** P.O. Box 2026, Flint, MI 48501-2026 (888) 679-6377, by these presents does convey, assign, transfer and set over to: **Freedom Mortgage Corporation, 907 Pleasant Valley Ave Ste 3, Mount Laurel, NJ 08054,** the following described Deed of Trust, with all interest, all liens, and any rights due or to become due thereon. Said Deed of Trust for **$515465.00** is recorded in the State of **WASHINGTON,** County of **Pierce** Official Records, dated **01/23/2018** and recorded on **02/20/2018,** as Instrument No. **201802200014** in Book No. **N/A,** at Page No. **N/A**
Original Trustor/Grantor: **ALAN G. PAGNI AND JUDY A. PAGNI, HUSBAND AND WIFE**
Original Beneficiary: **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Freedom Mortgage Corporation., its successors and assigns**
Property Address: **5604 134TH STREET CT NW GIG HARBOR, WA 98332**
Legal Description: **LOT 6, TRILLIUM PARK, ACCORDING TO THE PLAT THEREOF, RECORDED FEBRUARY 26 1992, UNDER RECORDING NUMBER 9202280533, IN PIERCE COUNTY, WASHINGTON.**
Parcel Tax ID: **3000070060**
Date: **02/14/2022.**

**Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Freedom Mortgage Corporation, its successors and assigns**

By: 
Name: **HOWARD D WIGGINS II**
Title: Vice President

STATE OF **New Jersey**
COUNTY OF **BURLINGTON**    } s.s.

On **02/14/2022,** before me, **Carla Johnson,** Notary Public, personally appeared **HOWARD D WIGGINS II, Vice President** of **Mortgage Electronic Registration Systems, Inc., as beneficiary, as nominee for Freedom Mortgage Corporation, its successors and assigns,** personally known to me (or proved to me the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he/they executed the same in her/his/their authorized capacity(ies), and that by her/his/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.



Notary Public: **Carla Johnson**
My Commission Expires: **08/16/2026**
Commission #: **50044120**

Drafted By: **Nirmala Tanikonda**

EXHIBIT C

203202270356  Page 1 of 2
203202270356

Electronically Recorded

Pierce County, WA       RJOHNSO
02/27/2023          2:14 PM
Pages: 2        Fee: $19.00

For reference only, not for re-sale.

After Recording Return To:
**Affinia Default Services, LLC**
301 E. Ocean Blvd, Suite 1720
Long Beach, CA 90802
File Number: 23-00526WA

### APPOINTMENT OF SUCCESSOR TRUSTEE

Grantor/Borrower:          Judy A. Pagni, and Alan G. Pagni

Grantee/Original Beneficiary: Mortgage Electronic Registration Systems, Inc., as designated
nominee for Freedom Mortgage Corporation, beneficiary of the
security instrument, its successors and assigns

Original Trustee:          First American Title Ins. Co.

Successor Trustee:         Affinia Default Services, LLC

Legal Description:         Lot 6, Trillium Park, according to the plat thereof, recorded
February 26, 1992, under Recording Number 9202280533, in
Pierce County, Washington.

Assessor's Tax Parcel No(s):      3000070060

Recording No. of Related Document:     201802200014

This Appointment of Successor Trustee ("Appointment") is made pursuant to the
Revised Code of Washington, Chapter 61.24.

Judy A. Pagni, and Alan G. Pagni are the Grantor(s), Mortgage Electronic Registration
Systems, Inc., as designated nominee for Freedom Mortgage Corporation, beneficiary of the
security instrument, its successors and assigns is the original beneficiary, and First American
Title Ins. Co. is the original trustee under that certain Deed of Trust dated January 23, 2018,
recorded on February 20, 2018, under Pierce County Auditor's File No. 201802200014 ("Deed
of Trust"). The Deed of Trust was assigned to Freedom Mortgage Corporation ("Beneficiary")
pursuant to that certain Assignment of Deed of Trust recorded on February 14, 2022, under
Pierce County Auditor's File No. 202202140004.

The undersigned, Beneficiary desires to appoint a new trustee in the place and stead of
the original trustee named above.

NOW THEREFORE, the undersigned hereby appoints Affinia Default Services, LLC, whose
address is 320 120th Ave NE, Suite 203B, Bellevue, WA 98005, as Successor Trustee under the

Deed of Trust, and the Successor Trustee shall have all the powers of the original trustee, effective immediately.

DATED: _Feb 24, 2023_

Freedom Mortgage Corporation

By: _(signature)_

Name: _Erica Tracy_

Title: _FCI Specialist III_

STATE OF _Indiana_ )
COUNTY OF _Hamilton_ )

    I certify that I know or have satisfactory evidence that _Erica D. Tracy_ is the person who appeared before me, and said person acknowledged that he/she signed this instrument and on oath stated that he/she was authorized to execute the instrument and acknowledged it as _FCI Specialist III_ of Freedom Mortgage Corporation to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

DATED: _2-24-2023_

_Mia Carter_

NOTARY SEAL

Print Name _Mia Carter_
Notary Public in and for the State of _Indiana_
My Commission/Appointment expires _02-05-2027_

MIA CARTER
Notary Public, State of Indiana
Hancock County
Commission Number 0718353
My Commission Expires
02/05/2027
SEAL

23-00526WA

2

For reference only, not for re-sale.

EXHIBIT D

202308280179
202308280179

Electronically Recorded

Pierce County, WA       EWILLIA
08/28/2023        10:36 AM

Pages: 5        Fee: $207.50

After recording return to:
Affinia Default Services, LLC
320 120th Ave NE, Suite B203
Bellevue, WA 98005

File No: 23-00526WA

## NOTICE OF TRUSTEE'S SALE
Pursuant to RCW 61.24 et seq.

| | |
|---|---|
| Grantor(s) of Deed of Trust | Judy A. Pagni and Alan G. Pagni |
| Current Beneficiary | Freedom Mortgage Corporation |
| Current Trustee | Affinia Default Services, LLC |
| Current Mortgage Servicer | Freedom Mortgage Corporation |
| Deed of Trust Recording Number (Ref. #) | 201802200014 |
| Parcel Number(s) | 3000070060 |

I.

NOTICE IS HEREBY GIVEN that the undersigned Trustee will on December 22, 2023, at 9:00 AM sell at public auction located 2nd Floor Entry Plaza Outside the County Courthouse, Pierce County Superior Courthouse, 930 Tacoma Avenue South, Tacoma WA 98402, to the highest and best bidder, payable at the time of sale, the following described real property, situated in the County of Pierce, State of Washington, to wit:

Lot 6, Trillium Park, according to the plat thereof, recorded February 26, 1992, under Recording Number 9202280533, in Pierce County, Washington.

Commonly known as: 5604 134th Street Ct. NW, Gig Harbor, WA 98332

The above property is subject to that certain Deed of Trust dated January 23, 2018, recorded February 20, 2018, under Auditor's File No. 201802200014, records of Pierce County, Washington, from Judy A. Pagni and Alan G. Pagni, as Grantor, to First American Title Ins. Co. as Trustee, to secure an obligation in favor of Mortgage Electronic Registration Systems, Inc., as designated nominee for Freedom Mortgage Corporation, beneficiary of the security instrument, its successors and assigns, as Beneficiary, the beneficial interest in which was assigned to Freedom Mortgage Corporation, under an Assignment recorded under Auditor's File No. 202202140004.

II.

1

No action commenced by the Beneficiary of the Deed of Trust is now pending to seek satisfaction of the obligation in any Court by reason of the Borrower's or Grantor's default on the obligation secured by the Deed of Trust.

III.

The defaults for which this foreclosure is made are as follows:

1. Failure to pay when due the following amounts which are now in arrears:
   o. $47,437.62 which included the monthly payments, late charges, and accrued fees and costs.

IV.

The sum owing on the obligation secured by the Deed of Trust is: Principal $457,883.86, together with interest as provided in the Note or other instrument secured from September 1, 2022, and such other costs and fees as are due under the Note or other instrument secured, and as are provided by statute.

V.

The above-described real property will be sold to satisfy the expense of sale and the obligation secured by the Deed of Trust as provided by statute. The sale will be made without warranty, express or implied, regarding title, possession, or encumbrances on December 22, 2023. The default(s) referred to in paragraph III must be cured by December 11, 2023 (11 days before the sale date), to cause a discontinuance of the sale. The sale will be discontinued and terminated if at any time on or before December 11, 2023 (11 days before the sale date), the default(s) as set forth in paragraph III are cured and the Trustee's fees and costs are paid. The sale may be terminated any time after December 11, 2023 (11 days before the sale date), and before the sale by the Borrower, Grantor, any Guarantor, or the holder of any recorded junior lien or encumbrance paying the entire principal and interest secured by the Deed of Trust, plus costs, fees, and advances, if any, made pursuant to the terms of the obligation and/or Deed of Trust, and curing all other defaults.

VI.

A written notice of default was transmitted by the Trustee to the Borrower and Grantor at the following addresses:

| | |
|---|---|
| AlanG. Pagni<br>5604 134th Street Ct Nw<br>Gig Harbor, WA 98332 | AlanG. Pagni<br>5604 134th Street Ct Nw<br>Gig Harbor, WA 98332 |
| JudyA. Pagni<br>5604 134th Street Ct Nw<br>Gig Harbor, WA 98332 | JudyA. Pagni<br>5604 134th Street Ct Nw<br>Gig Harbor, WA 98332 |

For reference only, not for re-sale.



For reference only, not for re-sale.

by both first class and certified mail on March 07, 2023; and the notice of default was personally served upon the Borrower and Grantor, or was posted in a conspicuous place on the real property described in paragraph I above on March 07, 2023.  The Trustee has possession of proof of mailing, and service or posting.

VII.

The Trustee whose name and address are set forth below will provide in writing to anyone requesting it, a statement of all costs and fees due at any time prior to the sale.

VIII.

The effect of the sale will be to deprive the Grantor and all those who hold by, through or under the Grantor of all their interest in the above-described property.

IX.

Anyone having an objection to the sale on any grounds whatsoever are afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to the RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.

X.

NOTICE TO OCCUPANTS OR TENANTS:

The purchaser at the trustee's sale is entitled to possession of the property on the 20th day following the sale, as against the Grantor under the Deed of Trust (the owner) and anyone having an interest junior to the deed of trust, including occupants who are not tenants. After the 20th day following the sale, the purchaser has the right to evict occupants who are not tenants by summary proceedings chapter 59.12 RCW.  For tenant-occupied property, the purchaser shall provide a tenant with written notice in accordance with RCW 61.24.060.

**THIS NOTICE IS THE FINAL STEP BEFORE THE FORECLOSURE SALE OF YOUR HOME.**

You have only until **90 calendar days BEFORE the date of sale** listed in this Notice of Trustee Sale to be referred to mediation. If this is an amended Notice of Trustee Sale providing a 45-day notice of the sale, mediation must be requested no later than **25 calendar days BEFORE the date of sale** listed in this amended Notice of Trustee Sale.

**DO NOT DELAY. CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you are eligible and it may help you save your home. See below for safe sources of help.

**SEEKING ASSISTANCE**

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide **foreclosure hotline** for assistance and referral to housing counselors recommended by the Housing Finance Commission:

Telephone: 1-877-894-HOME (1-877-894-4663)
Website:
http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm

The **United States Department of Housing and Urban Development:**
Telephone: 1-800-569-4287
Website:
http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfc.

The **statewide civil legal aid hotline** for assistance and referrals to other housing counselors and attorneys:

Telephone: 1-800-606-4819
Website: http://nwjustice.org/what-clear

PURSUANT TO THE FAIR DEBT COLLECTION PRACTICES ACT, YOU ARE ADVISED THAT AFFINIA DEFAULT SERVICES, LLC MAY BE DEEMED TO BE A DEBT COLLECTOR AND ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

DATED August 22, 2023.

By: *Kellee Vollendorff*
Name: Kellee Vollendorff
Title: Foreclosure Specialist of Affinia Default Services, LLC
320 120th Ave. NE, Suite B203
Bellevue, WA 98005
(425) 800-4703

For reference only, not for re-sale.

STATE OF California)
COUNTY OF Los Angeles)

I certify that I know or have satisfactory evidence that Kellee Vollendorff is the person who appeared before me, and said person acknowledged that they signed this instrument, on oath stated that they were authorized to execute the instrument and acknowledged it as the Foreclosure Specialist of Affinia Default Services, LLC to be the free and voluntary act of such party for the uses and purposes mentioned in the instrument.

Dated: _8/22/23_

EMMA SARA RAMIREZ
Notary Public - California
Los Angeles County
Commission # 2450434
My Comm. Expires Jun 17, 2027

Notary Public
Print Name _Emma Sara Ramirez_
My commission expires _06/17/2027_

For reference only, not for re-sale.

Unofficial Document

5